## JAMAICA WATER SUPPLY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 23.

Circuit Court of Appeals, Second Circuit.

Feb. 2, 1942.

Harold Dudley Greeley, William R. Green, Jr., and Warren Leslie, Jr., all of New York City (Satterlee & Green, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Newton K. Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The controversy is whether the sum of $575,000.00 in principal and interest which the petitioner was paid on July 25, 1934 by the City of New York under an agreement made in December 1933 to settle its suit against the City to recover the fair value of hydrant service it had furnished during the years 1923 to 1928, inclusive, was properly included by the Commissioner in the petitioner's gross income for its fiscal year ended June 30, 1934. The Board of Tax Appeals held that it was and this petition was brought to review that decision. The petitioner contends that the payment should have been allocated to the years in which the money was earned or, in the alternative, should have been treated as income for its fiscal year 1935 in which it was actually received.

The petitioner has for many years been supplying water for public and private use including the furnishing of hydrant service to the City of New York. It did the latter for some time until July 1, 1913 under a contract which fixed its pay at $18.00 per hydrant per year. Its contract then expired but, without any express renewal of it, the petitioner willingly continued to supply hydrant service to the City at the same rate until Jan. 1, 1919. On April 1, 1919, it notified the City that beginning as of Jan. 1, 1919 it would charge $45.00

per hydrant per year for the service. The City did not pay at the higher rate, however, though the petitioner from June 30, 1919 regularly billed it at the increased rate. It did continue to pay and, the petitioner regularly received and credited to it, the sum of $18.00 per hydrant per year, the dispute as to the price to be paid remaining unsettled but dormant until Oct. 22, 1929. Then the petitioner sued the City to recover with interest the difference between what it had been paid for the service rendered during the years 1919 to 1928, inclusive, and the amount at which it had billed the City. This suit was contested on the grounds that the $45.00 rate was not fair and reasonable; that the petitioner had received the payments made in full accord and satisfaction of its claims; and that the statute of limitations barred its claims in part. On Dec. 21, 1933 the parties agreed to a settlement, based on payment at the increased rate for the years 1923 to 1928 inclusive, which resulted in the above mentioned payment which has created this dispute as to taxation.

The petitioner, since sometime before 1923, has kept its books and filed its tax returns on the accrual basis. After it began to charge the City at the higher rate, its hydrant rental records were kept in two columns, in one column was entered the charge of $18.00 and in the other the charge of $45.00. Its journal entries were made, however, only on the basis of the $18.00 a year rate. And in the tax returns it filed for the taxable periods in which it earned the increased amount which it later received under the settlement no reference was made to its claims against the City for payment for the hydrant service at a rate higher than $18.00.

It will be helpful to have, and keep, in mind the respective rights and obligations of the City of New York and of the petitioner relative to the furnishing of the hydrant service whereby the petitioner earned the money it received in the settlement of its suit. During the period involved, Sec. 472 of the Greater New York Charter applied to the petitioner and required it to furnish the service it did under the superintendence, regulation and control of the Commissioner of Water Supply, Gas and Electricity at rates which were just and reasonable; "and in case of a controversy, the question of what is just and reasonable shall be finally determined as a judicial question on its merits by a court of competent jurisdiction." This duty to furnish the service was not contingent upon the existence of any contract with, or offer of compensation by, the City. City of New York v. Jamaica Water Supply Company, 181 App.Div. 49, 167 N.Y.S. 763; and People ex rel. City of New York v. Queens County Water Company, 232 N.Y. 277, 133 N.E. 889.

Another thing of great importance in deciding the issue presented by this petition is the fact that, during all the time the parties failed to agree on the price at which the petitioner furnished the service, the City paid it regularly at the old rate and did so under the claim that such payments were in full discharge of its obligation to pay what was just and reasonable compensation. So the dispute between the City and the petitioner, while it did relate solely to the rate, was not one which when finally determined would inevitably result in some amount being due from the City to the petitioner. It would only have that result in the event that the payments made by the City should turn out to be less than what was just and reasonable. Consequently, one stumbling block in the way of accruing the amount of the petitioner's claim in the years 1923 to 1928, inclusive, was that the petitioner's right to receive any part of the increased charges it made was itself disputed. It had no uncontested right to be liquidated merely but only a wholly disputed claim.

That being so, it was too uncertain during the years mentioned that the petitioner would ever receive anything at all on its claim to make any accrual then possible. United States v. Safety Car Heating Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Patrick McGuirl, Inc., v. Commissioner, 2 Cir., 74 F.2d 729; Commissioner v. Southeastern Express Co., 5 Cir., 56 F.2d 600.

Such a situation as this where there can be no approach to a fair assurance that anything will ever be received on a claim is to be distinguished from such cases as Commissioner v. Brooklyn Union Gas Co., 2 Cir., 62 F.2d 505, upon which the petitioner relies. There the taxpayer had actually received the income in dispute and though its right to retain it was in controversy, its possible repayment with a correlative right then to take a deduction was held, following North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, not enough to prevent ac-

crual. The court divided not on that legal principle but on whether it applied to one item which the dissenting judge considered so in controversy that the taxpayer's right to any of it was too vague and uncertain to support any accrual.

But when the petitioner finally made the settlement in December 1933 all doubt as to whether or not it was entitled to receive something on its claim for additional compensation was finally laid. The situation after the settlement agreement in December 1933 was one of a previously disputed right having been resolved in favor of the taxpayer and, though of lesser importance, of at least a tentative liquidation of that determined right. The item was then accruable. North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L. Ed. 733; New York Cent. R. Co. v. Commissioner, 2 Cir., 79 F.2d 247. As the petitioner was on the accrual basis, the Board was right in including the amount of the settlement in the fiscal year in which the agreement was made. Spring City Co. v. Commissioner, 292 U.S. 182; 54 S.Ct. 644, 78 L.Ed. 1200; Automobile Ins. Co. v. Commissioner, 2 Cir., 72 F.2d 265. And that is so also as to the interest paid. Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Patrick v. McGuirl, Inc., v. Commissioner, supra.

Affirmed.