THE HEER-ANDRES INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28148. Promulgated November 19, 1951.

*J. Weston Miller, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* Deficiencies determined against petitioner are in controversy for the fiscal year ended January 31, 1946, in declared value excess-profits tax and income tax of $7,213.04 and $21,969.29, respectively, and in income tax for fiscal 1947 in the amount of $8,838.10. The question is the proper year for reporting the accrual of rent due petitioner under a long term lease.

All of the facts are stipulated and are hereby found accordingly. Petitioner is a Missouri corporation located in Springfield, Missouri. It keeps its books and files its tax returns with the collector for the sixth district of Missouri on the accrual method for fiscal years ending January 31.

Prior to 1940 petitioner was the owner and operator of a department store. In that year petitioner discontinued its operations as a department store and leased the building for a 15-year period beginning March 1, 1940; the lease was subsequently extended to expire on August 31, 1969. Under the lease the tenant was to pay a minimum rental of $1,625 a month "payable in advance, on or before the tenth

(10th) day of each and every calendar month of said term  *  *  *."
The lease also provided for "additional rent" as follows:

* * * that in addition to the minimum rent as set forth, the Lessee will yield
and pay unto the Lessor, as additional rent, within ten (10) days following
January 31st of each year during the term of this leasehold, the amount by which
three (3%) per cent of the Lessee's net sales (as hereinafter defined) for each
twelve (12) months period preceding February first of each year during the term
of this leasehold, shall exceed the minimum rent hereinabove specified to be
yielded and paid unto the Lessor by the Lessee during each twelve (12) months
period, provided that, in the event of the termination and non-renewal of this
lease, for any reason whatsoever, said payment of additional rent shall be made
within ten (10) days following any such date of termination. The settlement
at January 31, 1941, shall relate to the period March 1, 1940, to January 31, 1941.

The lease not only required the lessee to "furnish to the Lessor, on
or before the tenth (10th) day of each month the net sales  *  *  *
for the month preceding," but it authorized the lessor "at any reason-
able intervals, to make  *  *  *  an examination of the books and
accounts of the Lessee for the purpose of determining the amount of
net sales of the Lessee for any period."

In accordance with the terms of the lease, petitioner became entitled
to receive on or before February 10, 1946, "additional rent" in the
amount of $62,370.49 with respect to the fiscal year ended January 31,
1946. Similarly, it became entitled to receive on or before February
10, 1947, "additional rent" in the amount of $85,628.65 with respect to
the fiscal year ended January 31, 1947. In reporting the additional
rent for tax purposes, petitioner each year included the amounts in-
volved in its income for the fiscal year during which they became pay-
able rather than for the fiscal year with respect to which they were
payable. Thus, it reported the $62,370.49 on its 1947 returns and the
$85,628.65 on its 1948 returns. The Commissioner, on the other hand,
has taken the position that these amounts accrued and should have
been reported on petitioner's 1946 and 1947 returns, respectively. We
think that the Commissioner's determination in this respect is correct
and is required by precedent.

It has been firmly established that an item accrues for tax purposes
when all the events have occurred which fix the amount and determine
the liability of the obligor. Thus, *United States* v. *Anderson*, 269
U. S. 422, involved a deduction from gross income on account of a mu-
nitions tax imposed with respect to the year 1916. The return for the
munitions tax was not due, nor was the tax payable, until 1917. The
taxpayer attempted to deduct that tax from its 1917 income, whereas
the Government insisted that since returns were filed on the accrual
basis, the munitions tax accrued in 1916, and could be deducted only
from the taxpayer's 1916 income. The Court's decision that the item
accrued in 1916 has become a landmark in the field of accrual account-
ing for tax purposes. It would serve no useful purpose to review the

many and varied situations in which the concepts underlying that decision have been applied. Suffice it to say that just as it was not open to the taxpayer in the Anderson case to accrue the munitions tax in the year when it became due and payable, it is not open to petitioner herein to accrue the "additional rent" in the following year, merely because it did not become payable until the first 10 days of the following year.

All the events which fixed the amount of the additional rent and determined the liability of the lessee to pay it had occurred during the fiscal year with respect to which such rent became payable. It is wholly immaterial, under established concepts of accrual accounting, that payment could not be compelled or was not in fact made until the following year. Cf. *Rite-Way Products Co.*, 12 T. C. 473, 480.

It is suggested that petitioner had no means of knowing by the end of the fiscal year just how much the additional rent would be. But the lease itself required the lessee to furnish petitioner with monthly reports as to net sales, which constituted the basis for computing the additional rent. Thus, before the end of any fiscal year petitioner would have the precise figures with respect to 11 of the preceding months, and there is no showing that petitioner could not make a reasonably accurate estimate of the additional rent due to it at the end of the fiscal year. Moreover, long before its returns became due, 2½ months later, that estimate could be corrected to reflect the exact amount. As in the *Anderson* case, "all the events" (269 U. S. at 441) fixing the amount of the item and the liability of the obligor to pay it had occurred before the end of the earlier of the two years.

Nor is a different result required by the fact that in the four or five years prior to the years involved herein petitioner had similarly reported the additional rent in its returns for the year subsequent to the year with respect to which such additional rent had accrued. If its returns were incorrect for the first year of the lease, the error is not vitiated by being repeated in three or four successive returns. Compare *Booth Newspapers, Inc.*, 17 T. C. 294, where a particular item had been erroneously treated on the taxpayer's books and returns for a period of 15 years prior to the tax years in litigation.

Petitioner makes an alternative contention with respect to the year ended January 31, 1946. The Commissioner's determination for that year was based upon the inclusion in petitioner's income not only of the additional rent of $62,370.49 which became payable in February 1946, but also of an item of $47,503.87, representing the additional rent for the previous year which became payable in February 1945. The Commissioner's position is predicated upon the contention that the period of limitations had expired upon his power to proceed with respect to the year ended January 31, 1945, and that unless this item of $47,503.87, reported by petitioner in its 1946 return, is taxed in

that year it will escape taxation entirely.[1] In this connection, the Commissioner relies upon *Schuman Carriage Co.*, 43 B. T. A. 880, where a taxpayer, on the accrual basis, had reported interest income for a number of years as it was received rather than as it accrued, and where the decision, that such interest for a particular year (1934) should be accrued, was accompanied by a holding that the taxpayer was likewise accountable in that same year for interest actually accrued in prior years but not yet paid. In rejecting the taxpayer's contention that only the amount of interest accruing during 1934 should be taken into account, it was said (43 B. T. A. at 889) :.

The facts, are, however, that there was an amount of accrued interest income upon the petitioner's books of account at January 1, 1934, which had never been returned for taxation. Manifestly, this amount must be included in the gross income of some year. The failure of the petitioner to make its returns consistently upon the accrual basis may place it in an unfortunate position. But for this situation the petitioner is alone to blame.

Cf. *C. L. Carver*, 10 T. C. 171, affd. (C. A. 6) 173 F. 2d 29.

The *Schuman* case does indeed furnish support for the respondent's position. However, more recent decisions appear to require a contrary result. *Robert G. Frame*, 16 T. C. 600; *Estate of Samuel Mnookin*, 12 T. C. 744, affd. (C. A. 8) 184 F. 2d 89. In the circumstances, we hold that the additional rent of $47,503.87 with respect to the year ended January 31, 1945, may not be included in petitioner's income for the following fiscal year.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

OPPER, *J.*, dissenting: It seems to me incongruous to treat the concept of accrual accounting as a rule of law rather than a matter of practical business operation.[1] By the determination of this deficiency respondent has succeeded at once in overturning petitioner's long-standing and consistent accounting practice, and at the same time in losing money for the Treasury; and by our decision we are placing our stamp of approval on the result, if not on the procedure. Such a consequence would be bad enough if it were inevitable. But dealing with the question as an accounting proposition, or, for the matter of that, even as a legal question, it seems to me not only unnecessary but actually unsound.

Petitioner received rent under a long term lease which called for two types of payment. One was a specified amount due in advance on the tenth of each month. Petitioner did not accrue all of these payments at the time the lease was signed when theoretically both the

---

[1] No such pyramiding of income is involved in the Commissioner's determination for the year 1947.

[1] [Dissent] See footnote 2, *infra.*

obligation to pay in the future and the amount of the payments became fixed, cf. *Fifth Street Store*, 6 T. C. 664, but in accordance with what appears to be standard practice accrued the installments on its books and reported them on its returns as income for the years during which they became due. See *Leo M. Klein*, 20 B. T. A. 1057; *Oregon Terminals Co.*, 29 B. T. A. 1332; *Marguerite Hyde Suffolk & Berks*, 40 B. T. A. 1121; *Jamaica Water Supply Co.*, 42 B. T. A. 359, 364, affd. (C. A. 2) 125 F. 2d 512, certiorari denied 316 U. S. 698. Respondent has never made any objection to this aspect of the matter and in fact does not do so now. These amounts are not in dispute here.

In addition to the stipulated monthly rent, the tenant agreed to pay a certain percentage of his annual gross sales, to be due on or before the tenth of the first month in the following year. These payments also petitioner customarily and uniformly recorded on its books and reported as income on its tax returns as of the time they were due. But as to these payments respondent now asserts that petitioner's books failed to reflect its income and that since the amount of the payment is susceptible of computation in the closing hours of the last day of the year, accrual theories require that they be taken up in petitioner's income not when they became due but when they became ascertainable; and we are agreeing with him.

It is not necessary to say that all rent is accruable on its due date and neither before nor after. There are many proper methods of accrual accounting, and there may be arrangements and systems of accounting which would make other provisions for recording rental income appropriate or even imperative. But here it seems to me obvious that petitioner's long-continued and consistent method of accounting has not distorted its income and over such a period of years as is covered by the lease could not do so. See *Grand Central Public Market* v. *United States* (S. D., Cal.), 22 F. Supp. 119, appeal dismissed (C. A. 9) 98 F. 2d 1023.

Under these circumstances respondent's own regulations appear to require that petitioner be permitted to retain the system adopted by it. See *New Orleans Cold Storage & Warehouse Co.*, 40 B. T. A. 121; *Atlantic Coast Line R. R. Co.*, 4 T. C. 140. "* * * If the method of accounting regularly employed by [the taxpayer] in keeping his books clearly reflects his income, it is to be followed with respect to the time as of which items of gross income * * * are to be accounted for. * * * A method of accounting will not, however, be regarded as clearly reflecting income unless all items of gross income and all deductions are treated with *reasonable consistency*." (Emphasis added.) Regulations 111, section 29.41–1,–2. Petitioner's system treats the rental items, both fixed and percentage, as income when they become due, regardless of actual payment, and thus with complete, not to say reasonable, consistency. Since that

method does not distort its income, I would conclude that its continued use, if not mandatory, is at least permissible under the regulations. *Belt Ry. Co. of Chicago*, 9 B. T. A. 304, 312, affirmed other issue (C. A. D. C.), 36 F. 2d 541.

*United States* v. *Anderson*, 269 U. S. 422, upon which the present opinion is predicated, does not support its conclusion and, if anything, looks in the opposite direction. There the munitions taxes which were the disputed item were actually accrued on the taxpayer's books for the year 1916. The Supreme Court held that if the taxpayer's actual method of accounting did not distort its income it was required to make its returns on the same basis, and report them as an expense of 1916. Applying that principle to this case the fact that petitioner accrued the amounts on its books as they became due and reported its income in exact accord with its proper bookkeeping practice, and the further fact that such a practice consistently followed does not distort its income, brings its actual situation more nearly within the facts and the language of the *Anderson* case.[2]

Such a conclusion would, of course, make it unnecessary to place the petitioner in the position of receiving an unrequested and inequitable windfall by excluding a whole year's percentage rental from the taxable income of any year. From both conclusions I respectfully note my dissent.

TIETJENS, *J.*, agrees with this dissent.

---

[2] "In making up its income tax return for 1916, appellee deducted from gross income all the items appearing on its books as losses sustained and obligations and expenses incurred during the year, *except that it omitted from the return the items of munitions tax, likewise carried on its books,* as an obligation or expense incurred or accrued in the year.

\* \* \* \* \* \* \*

"\* \* \* In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question *did not stand on any different footing than other accrued expenses appearing on appellee's books.* In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued. It should be noted that section 13 (d) makes no use of the words 'accrue' or 'accrual' but merely provides for a return *upon the basis upon which the taxpayer's accounts are kept, if it reflects income*—which is precisely the return insisted upon by the government. We do not think that the Treasury decision contemplated a return on any other basis when it used the terms 'accrued' and 'accrual' and provided for the deduction by the taxpayer of items 'accrued on their books.' " *United States* v. *Anderson, supra,* 423, 425. (Emphasis added.)

