OPINION. Johnson, Judge: The basic issue involved in this proceeding is the amount of petitioner’s excess profits tax credit for the fiscal years 1943 and 1944. The issue arises from the question of the proper treatment to be accorded certain items of manufacturers’ excise taxes which petitioner paid in the fiscal years 1937 and 1938. A brief resume of the facts will be proper: Issue 1. The Revenue Act of 1932 imposed an excise tax upon cosmetics and toilet preparations in the amount of 10 per cent of the price for which these items were sold by the manufacturer. From the time this tax was first imposed and until July 1, 1933, petitioner manufactured and distributed its own products. During this time petitioner computed and paid the tax on the basis of its selling price to the trade. On June 9, 1933, petitioner entered into a contract whereby petitioner agreed to sell its entire output to one distributor. This distributor also undertook the cost of all advertising and sales promotion for petitioner’s products. After July 1, 1933, petitioner computed and paid the excise tax on the basis of its selling price to the distributor; petitioner passed this tax on to its distributor by adding the tax to the manufactured selling price. Petitioner’s selling prices after the June 9, 1933, agreement were less than its prior selling prices because the prices after the agreement were based on the manufacture only and did not include the cost of promotion. On or about June 20, 1935, tlie Commissioner assessed additional excise taxes against the petitioner for the period from July 1933 to January 1935. This additional tax was based on the Distributor’s selling price to the trade. Later a like assessment was made on all sales of the Distributor up to June 29, 1939. Then the excise tax provisions were amended so that the basis of the manufacturers’ selling price excluded certain selling and advertising costs. Petitioner paid the additionally assessed taxes under protest but did not charge or collect this protested tax from the Distributor. The full amount of the additional excise tax which petitioner paid for the fiscal years 1934 through 1938 was claimed and allowed as deductions in those years. Petitioner brought a test suit in the United States District Court to recover this additional tax from the Commissioner. Petitioner recovered the additional tax for July 1933. Petitioner then instituted a suit for the other months, but prior to the termination of that suit a Supreme Court decision was decided adversely to petitioner’s contentions. Petitioner then dismissed its second suit. In accord with the provisions of the sales agreement of June 9, 1933, and as ratified by another agreement in 1945, petitioner collected from the Distributor the sum of $542,915.84 with interest. This sum reimbursed petitioner for the additional excise taxes it paid from July 1933 through June 1939. This amount was included on petitioner’s fiscal year 1945 income and excess profits tax returns. Under section 721 petitioner paid no excess profits tax on this sum recovered from the Distributor. In computing petitioner’s excess profits tax liability for the taxable years 1943 and 1944, respondent determined that the deductions for the excise taxes paid in the years 1937 and 1938 did not constitute abnormal deductions within the meaning of section 711 (b) (1) (H) or (b) (1) (J) (i) of the Code.[1] Now, in this first issue petitioner contends that the additional excise taxes for the years 1937 and 1938 should, be disallowed in the computation of its excess profits tax credit for the taxable years 1943 and 1944. The issue is whether these deductions were abnormal, or abnormal in class. After reviewing the record we feel that the substance of petitioner’s claim is based upon the contention that there were two separate companies, one for the manufacture and one for the promotion and selling, and that the transactions between the two companies were at arm’s length. Therefore, the only excise tax that the petitioner should bear would be that tax levied on the manufacturing process and not the additional tax based on the promotion and selling activities. Perhaps this might be so if the intercompany transactions were at arm’s length, but from the record before us we can not find such a fact. On the contrary, the evidence points in the opposite direction. The stock in both companies was closely held by the identical stockholders. These stockholders had identical economic interests — the preservation of both companies, and this like interest would be adverse to arm’s length transactions. Campana Corporation v. Harrison, 114 F. 2d 400, 408. Since the propriety of the additional excise tax was not successfully refuted by the petitioner, we must only determine the normality or abnormality of the protested tax. The petitioner asks us to find that these additional taxes, which were protested, resulted in abnormal deductions. However, there is nothing in the record to show that these deductions for the protested excise taxes were of a class abnormal for the petitioner. See Frank H. Fleer Corporation, 10 T. C. 191. The excise taxes for 1937 and 1938 were the same excise taxes that were first levied in 1933 on the manufacture of certain toilet preparations and pharmaceuticals. See Universal Optical Co., 11 T. C. 608. The mere fact that petitioner elected to take the protested excise taxes as deductions in these two base years rather than offset these taxes against income, as it had done with the unprotested taxes, did not make the deductions abnormal. Internal bookkeeping procedure in itself can not make a deduction abnormal under section 711(b) (1) (J) (i). Petitioner also contends that it qualifies under section 711 (b) (1) (H). Since the Federal Government from time to time imposes various kinds of taxes on manufactured products, we can not reasonably say that the assessment of a manufacturer’s excise tax was abnormal or extraordinary or something which petitioner could not reasonably expect in the normal operation of its business. Frank H. Fleer Corporation, supra. Our finding that the deductions for excise taxes were not abnormal, or of a class abnormal to the petitioner, therefore disposes of this issue under section 711 (b) (1) (H). The respondent must be sustained on this issue. Issue 0. Petitioner also contends that the additional excise taxes which it could pass on to its distributing agent were properly accruable as income in the fiscal years 1937 and 1938, and therefore should be added to its base period net income. The result of this addition would be an increased credit for its excess profits tax taxable years. Respondent, on the other hand, denies petitioner’s contention and urges that no adjustment be made for the accrual of income. In Spring City Foundry Co. v. Commissioner, 292 U. S. 182, 184, it was held that “it is the right to revenue and not the actual receipt that determines the inclusion of the amount in gross income” when a taxpayer is on an accrual basis. This right alone is not controlling. We must look at the entire record to determine whether the right to the income was consonant with the surrounding facts. Petitioner’s contention is based on the June 9, 1933, agreement whereby it was agreed between the parties that the petitioner’s selling price be increased by any excise taxes levied by the United States or the State of Illinois. Probably without the extenuating facts such as we have here, this agreement would require us to hold that the protested excise taxes accrued as income in 1937 and 1938. Looking at the other facts before us, we find that the bookkeeping records of petitioner, while at best only evidentiary, do not show these additional excise taxes to be accrued or collected by petitioner; nor do the auditor’s reports for the Distributor reflect the additional excise taxes as accrued accounts payable. We said in Jamaica Water Supply Co., 42 B. T. A. 359, 365; affd., 125 F. 2d 512, and find that it is apropos here, that: Petitioner’s own treatment of the disputed items in failing to accrue them on its books, or to include them in its return, is persuasive evidence of the correctness of respondent’s position. * * * Further, petitioner’s other actions refute any claim that these taxes accrued as income. When petitioner brought suit against the Commissioner for recovery of these additional taxes, prior to recovery petitioner would have been required to show under section 621 (d) of the Revenue Act of 1932 the following: (d) No overpayment of tax under this title shall be credited or refunded * * * in pursuance of a court. decision or otherwise, unless the person who paid the tax establishes * * * (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has repaid the amount of the tax to the ultimate purchaser of the article, or unless he flies with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund. Certainly, if these requirements were met, petitioner would be precluded from holding that the amounts for the additional excise tax were accrued income. The additional taxes were either accrued income, or refundable from the Commissioner. The alternate theories are incongruous; the additional taxes must be income or not, for both theories can not coexist. We can only conclude from the bookkeeping records, the suits for refund, and the 1945 treatment of the Distributor’s payment that petitioner considered that the additional taxes did not accrue as income in the fiscal years 1937 and 1938. We said in Harbor Plywood Corporation, 14 T. C. 158, 161; affd., 187 F. 2d 734: If there is any contingency as to the taxpayer’s right to the income, as distinguished from an uncertainty as to the time of its receipt, it is taxable in the year when the contingency is removed. United States v. Safety Car Heating & Lighting Co., 297 U. S. 88. * * * Petitioner’s suit created a contingency, and although a right to pass on the tax to its distributor may have existed, petitioner voluntarily elected to seek a refund from the Commissioner rather than accrue the income or collect the additional tax from the Distributor. We therefore must sustain the respondent on this issue. Issue §. Since we have made no adjustments which would require a consideration of section 734 of the Code, it will not be necessary to discuss respondent’s alternative contention with respect to Issues 1 and 2. Decision will be entered for the respondent.