JOHN M. BRAVO, Plaintiff and Appellant, *v.* TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 10915. Argued November 4, 1953.—Decided March 3, 1954.

*J. J. Ortiz Alibrán* for appellant. *José Trías Monge, Attorney General,* and *José A. García Malpica, Assistant Attorney General,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Mayagüez Sugar Company was the owner of a certain property which it divided into several parts selling it to different persons. One of the purchasers was John M. Bravo, who, since 1944 when he bought it until now, has been using his property for the planting of sugar cane. In his business, Bravo keeps his accounts on the accrual basis.

In his 1945 income tax return Bravo reported certain losses during that fiscal year. As part of the income reported for that year he included the amount of $21,838.22 as a subsidy from the Federal Government pursuant to the provisions of the Sugar Act, although it was not until February 7, 1946 that Bravo applied for payment thereof, which he received on March 29, 1946. The reasons adduced by Bravo to justify the delay were, as he himself explains, that the Production and Marketing Administration carried out an investigation to determine the validity of the division of the property sold by the Mayagüez Sugar Company. The

reason for this investigation was due to the fact that the Sugar Act pays higher subsidies to small *colonos*, wherefore the federal agency had to ascertain that no illegal motives were involved in the transaction. Besides, the Production and Marketing Administration required that the area of the lot bought by Bravo be clarified because of an alleged area excess.

Bravo filed his return for the year 1946 and the Secretary of the Treasury transferred the amount of $21,959.87 [1] from the 1945 to the 1946 return, on the ground that, since in his opinion the amount was claimed and paid in the year 1946, it should not be reported as income in 1945. As a result of the action of the Secretary of the Treasury, Bravo was notified of a deficiency of $7,420.41 for 1946 and allowed a net loss of $10,826.61 in 1945. Feeling aggrieved by this action of the Secretary of the Treasury and after compliance with the legal requirements, the taxpayer filed suit in the former Tax Court. On August 12, 1952 the Superior Court of Puerto Rico, San Juan Part, rendered judgment dismissing the complaint filed by Bravo. Bravo has appealed from that judgment and assigns the following errors:

"1. In dismissing the complaint;

"2. In considering that the plaintiff was not obliged to report in 1945 the federal compensation corresponding to the 1945 crop pursuant to the Sugar Act of 1937;

"3. In regarding the item of $21,959.87, notwithstanding that plaintiff had complied with all the legal requirements, on December 31, 1945, as subject to contingencies, and therefore not accruable in 1945 on the accrual basis;

"4. In considering that because an application for payment had not been made, or had not been authorized by the Secretary of Agriculture of the United States, the taxpayer was precluded from declaring his income in the corresponding year;

---

[1] The difference between the $21,838.28 reported by Bravo and the $21,959.87 paid to him later, corresponds to a planters' cooperative formed by Bravo and two of his brothers.

"5. In holding that the application and the authorization were indispensable, notwithstanding the fact that such is a purely technical question already decided by the cases adversely to the opinion of the court."

The problem before us is the determination of *when* the item in controversy should be included as gross income. Pearce, *Income Tax Fundamentals*, p. 156.

██ There is no issue on the question that the accounting method employed by the taxpayer is the one known as the accrual-basis system.[2] Section 14 (b) of our Income Tax Act, Act No. 74 of August 6, 1925, (Sess. Laws, p. 400) authorizes the taxpayer to employ any regular method of accounting as long as it clearly reflects his income.[3]

---

[2] Where the income is taken into consideration as soon as earned, whether received or not, and the expenses are considered as soon as they are incurred, whether paid or not, it is said that the accounting system is on the accrual basis. *Clarence Shock*, 1 B.T.A. 528; *Owen-Ames-Kimball Co.*, 5 B.T.A. 921.

[3] That Section reads:

"(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Treasurer does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 3 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

Section 3 (d) provides:

"The terms 'paid or incurred' and 'paid or accrued' shall be construed according to the method of accounting upon the basis of which the net income is computed under sections 14 or 30. The deductions and credits provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed under sections 14 or 30, unless in order to clearly reflect the income, the deductions or credits should be taken as of a different period."

Section 15 (a) insofar as pertinent provides:

"The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the methods of accounting permitted under subdivision (b) of section 14, any such amounts are to be properly accounted for as of a different period."

■ The Secretary of the Treasury contends that the taxpayer could not consider the subsidy he subsequently received in 1946 as accrued in 1945. He claims that until an application for payment is made and is approved by the Secretary of Agriculture, after the latter determines whether the legal requirements of law have been fulfilled, the taxpayer may not consider the subsidy as accrued, since he alleges that until approval the payment is uncertain. He contends that the payment of the subsidy is contingent on the approval by the Secretary of the Treasury.

We agree with the appellee that an item whose collection is subject to a contingency may not be considered as accrued. 2 Mertens, *Law of Federal Income Taxation,* § 12.62, p. 216; *Comm. Int. Revenue* v. *Southeastern Express Co.,* 56 F. 2d 600; *Helvering* v. *Russian Finance & Construction Corporation,* 77 F. 2d 324; *Jamaica Water Supply Co.,* 42 B.T.A. 359, affirmed in *Jamaica Water Supply Co.* v. *Commissioner of Internal Revenue,* 125 F. 2d 512; Holland, *Accrual Problems in Tax Accounting,* 48 Mich. L. R. 149, 159 (1949). This principle stems from a dictum enunciated by the Supreme Court of the United States [4] to the effect that an obligation does not accrue until a definite liability arises. Other courts, availing themselves of that language, established the rule that an obligation is not sufficiently defined so as to be considered as incurred until all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. See Holland's afore-cited article at page 153 and the cases cited by him in n.7.

■ The question for consideration is, therefore, to determine when the taxpayer Bravo could consider as income the subsidy which the Sugar Act grants, although to determine when given items constitute income is a "perplexing

---

[4] *United States* v. *Anderson,* 269 U.S. 422, 440, 441.

question." 2 Mertens, *op. cit.*, p. 125.[5] In order to determine it we must consider (1) what is the accrual-basis method, also called "accumulation method"; and (2) up to what extent was the payment of the subsidy subject to a contingency. As we formerly noted, *supra*, footnote 2, under that system income is considered as such as soon as it is earned, whether received or not, that is, the method allocates entries to the accounting period in which earned, regardless of the time of receipt or payment. 2 Mertens, *op. cit.,* 12.01, p. 121; Magill, *When is Income Realized*, 46 Harv. L. R. 933, 940. The basic idea under the accrual system of accounting—as stated in *H. H. Brown*, 8 B.T.A. 112, 117—is that the books shall immediately reflect obligations and expenses definitively incurred and income definitively earned without regard to whether payment has been made or is still due.

 According to Mertens, Vol. 2 of his afore-cited work, 12.60, p. 210, the accrual basis contemplates (1) an existing valid liability of the debtor, (2) a reasonable fixing or determination of the amount of the liability, and (3) the element of collectibility, included in the requisites of item 2. In the course of this opinion we shall examine, if necessary, the presence or absence of these three elements in the case before us.

 As to the first requirement it is essential that (*a*) the liability exist and (*b*) that it be not subject to a genuine contingency.

(*a*) *Existence of valid liability.*

There is no doubt as to the existence of a liability. The subsidy offered by the Federal Government under the Sugar Act is not a mere gift but compensation paid in consideration of expenses incurred by the producers upon the faith

---

[5] The problem is not simple because the word "accrue" has no definite meaning, therefore it is fraught with confusion. *Ernest M. Bull*, 7 B.T.A. 993. When an item accrues is largely a question of fact to be determined in each case. 2 Mertens, *op. cit.*, p. 211.

of the Government's promise to pay a subsidy to them. *Allen* v. *Smith,* 173 U.S. 389, 402. The primary object of the Sugar Act of 1948, similar to its predecessor, the Sugar Act of 1937, in its most important aspects, is "the stabilization of the sugar producing, refining, and importing industries." U. S. Code Congressional Service, 1947, p. 1686. See also *Chandler Laboratories* v. *Smith,* 88 F. Supp. 583, 585. Once the planter complies with the terms of the statute, his right to the subsidy becomes a vested right. *Burdon Sugar Refining Co.* v. *Payne,* 167 U. S. 127, 148; *Calder* v. *Henderson,* 54 Fed. 802, 806. The existence of the liability and its validity is, therefore, clear. The appellee has not disputed this fact.

(b) *The liability should not be subject to a substantial contingency.*

According to the Sugar Act of 1937 [6] the sugar cane planter was granted a subsidy, the amount of which was

---

[6] Act of September 1, 1937, 50 Stat. 903, 7 U.S.C.A., 1100 *et seq.* Insofar as pertinent the statute provides, the following:

"Subchapter III—*Conditional-Payment. Provisions*

"1131. Conditions of productions.

. "The Secretary is authorized to make payments on the following conditions with respect to sugar or liquid sugar commercially recoverable from the sugar beets or sugarcane grown on a farm for the extraction of sugar or liquid sugar:

"Child labor

" (a) That no child under the age of fourteen years shall have been employed or permitted to work on the farm, whether for gain to such child or any other person, in the production, cultivation, or harvesting of a crop of sugar beets or sugarcane with respect to which application for payment is made, except a member of the immediate family of a person who was the legal owner of not less than 40 per centum of the crop at the time such work was performed; and that no child between the ages of fourteen and sixteen years shall have been employed or permitted to do such work, whether for gain to such child or any other person, for a longer period than eight hours in any one day, except a member of the immediate family of a person who was the legal owner of not less than 40 per centum of the crop at the time such work was performed. The Secretary is authorized to make payments, notwithstanding a failure to comply with the conditions provided in this subsection, but the payments made with respect to any crop shall be subject to a deduction of $10 for each child for each day, or a portion of a

determined on the basis of the hundredweights of commercial sugar recoverable from the cane ground by the planter. The Secretary of Agriculture was authorized to make subsidy payments with respect to which an application for payment had been made, provided that, in accordance with a previous determination made by the Secretary, the producer had complied with specific conditions enumerated by the statute, such as not to employ children under the age of fourteen years, the payment of a minimum wage, and compliance with specific work-hours requirements, etc.

At the close of the 1945 grinding season, Bravo, as a matter of fact, had complied with all the conditions required

---

day, during which such child was employed or permitted to work contrary to the foregoing provisions of this subsection.

"Proportionate share production

"(b) . . . . . . .

"Wage standards; payment of producer by processor

"(c) (1) That all persons employed on the farm in the production, cultivation, or harvesting of sugar beets or sugarcane with respect to which an application for payment is made shall have been paid in full for all such work, and shall have been paid wages therefore at rates not less than those that may be determined by the Secretary to be fair and reasonable after investigating and due notice and opportunity for public hearing; and in making such determinations the Secretary shall take into consideration the standards therefor formerly established by him under sections 601–608, 608a–608c, 608d–612, 613–619, 620, 623, and 624 of this title, and the differences in conditions among various producing areas: *Provided, however,* That a payment which would be payable except for the foregoing provisions of this subparagraph may be made, as the Secretary may determine, in such manner that the laborer will receive an amount, insofar as such payment will suffice, equal to the amount of the accrued unpaid wages for such work, and that the producer will receive the remainder, if any, of such payment.

"(2) That the producer on the farm who is also, directly or indirectly a processor of sugar beets or sugarcane, as may be determined by the Secretary shall have paid, or contracted to pay under either purchase . . . for any sugar beets or sugarcane grown by other producers and processed by him at rates not less than those that may be determined by the Secretary to be fair and reasonable after investigation and due notice and opportunity for public hearing.

"1132. Quantity of sugar; time for payments—

Amount as determined by Secretary

"(a) The amount of sugar or liquid sugar with respect to which payment may be made shall be the amount of sugar or liquid sugar commercially recoverable . . .

by the statute. However, he did not make his application for payment corresponding to that season, until February 7, 1946. Finally on March 29, 1946 payment was made. Under the accrual basis system employed by the farmer, he reported the income from the subsidy as accrued in 1945.

At the hearing in this Court, the parties agreed that the question for decision was whether the right to compensation or subsidy arises when the farmer complies with the conditions or requirements of law, or when the Federal Secretary of Agriculture determines that the conditions or requirements have been fulfilled. If we decide the former,

---

"Determination of proportionate share of farm

"(b) . . . . . . .

"Date payments to commence

"(c) . . . . . . .

" 1134. Computation of payments; recipients thereof—Base rate

"(a) . . . . . . .

"Farm unit as basis of calculation

"(b) . . . . . . .

"Total payment

"(c) . . . . . . .

"Persons entitled to payments

"(d) Application for payment shall be made by, and payments shall be made to, the producer or, in the event of his death, disappearance, or incompetency, his legal representative, or heirs: *Provided, however*, That all producers on the farm shall signify in the application for payment the percentage of the total payment with respect to the farm to be made to each producer: *And provided further*, That payments may be made, (1) in the event of the death, disappearance, or incompetency of a producer, to such beneficiary as the producer may designate in the application for payment; (2) to one producer of a group of two or more producers, provided all producers on the farm designate such producer in the application for payment as sole recipient for their benefit of the payment with respect to the farms; or (3) to a person who is not a producer, provided such person controls the land included within the farm with respect to which the application for payment is made and is designated by the sole producer (or all producers) on the farm, as sole recipient for his or their benefit, of the payment with respect to the farm.

" 1136. Finality of Secretary's determinations

"The facts constituting the basis for any payment or the amount thereof authorized to be made under this subchapter, officially determined in conformity with rules or regulations prescribed by the Secretary, shall be reviewable only by the Secretary, and his determinations with respect thereto shall be final and conclusive."

then we would be holding that as soon as the farmer considers that he has complied with the aforementioned legal conditions, his right to payment of compensation or subsidy is not subject to the contingency that there might arise a future event rendering the payment uncertain. We reject such a proposition. The right of the farmer or sugar producer to compensation depends on the fact that he fulfills, to the satisfaction of the Secretary of Agriculture, all the conditions required by the statute. The farmer's own judgment as regards fulfillment of the conditions on his part, is not enough. Such a judgment or determination does not entitle him to compensation. In order to receive it, the conditions must be fulfilled to the satisfaction of the Secretary of Agriculture, which implies that the right to compensation is subject to the latter's determination of the basic facts on which the right of the farmer or producer rests. The function of the Secretary of Agriculture, with respect to the subsidy payment, is not merely ministerial; it is not limited to certifying the payment, once he receives the application containing the facts on which the payment is based. His mission goes farther. He investigates, through the corresponding agencies, the facts set forth in the application, and if the requirements of law have been fulfilled to his satisfaction, he then authorizes payment.

To demonstrate that the right to compensation is subject to the contingency of the determination of the Secretary of Agriculture that the farmer has complied with the legal requirements, we need only give here an example. The farmer has employed several minors in his farm. In the opinion of the farmer each of the minors is over 14 years old. The agency which investigates his application for payment finds that the aforesaid workers were under 14 years of age and that therefore the farmer did not qualify for the total payment of compensation. The Secretary of Agriculture determines that in fact the farmer, by employing children under 14 years of age on his farm, failed to comply

with the requirements listed in the statute and undertakes to make the corresponding deductions, thereby substantially reducing the amount of compensation. In such case the farmer would be reporting income which he will never receive. Assuming, without deciding, that the farmer had a judicial remedy to challenge the determination of the Secretary of Agriculture, although the Sugar Act expressly provides that the facts on which the payment is based shall be reviewable by that official and that his determinations to that effect shall be final and conclusive, even then the right of the farmer would be subject to the contingency of whether his contention prevails in the courts.

In view of the foregoing, we conclude that the farmer's right to compensation is subject to the contingency that the farmer fulfill the conditions required by the statute, to the satisfaction of the Secretary of Agriculture, and that it is not until that time that it may be said that any right to the income has accrued, or that there arose a specific liability on the part of the government to make the conditional payment.

The trial court did not err in so holding, and the judgment appealed from will be affirmed.