Rod Realty Company v. Commissioner.
Rod Realty Co. v. Commissioner
Docket No. 5666-65.
United States Tax Court
T.C. Memo 1967-49; 1967 Tax Ct. Memo LEXIS 211; 26 T.C.M. (CCH) 243; T.C.M. (RIA) 67049; March 17, 1967
Bennet Kleinman, Leader Bldg., Cleveland, Ohio, for the petitioner. Donald H. Richards, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined a deficiency in petitioner's income tax for the fiscal year ended May 31, 1963, in the amount of $13,354.48. The only issue for decision is whether the petitioner, an accrual basis taxpayer, is required to include in its taxable income for the fiscal year ended May 31, 1962, percentage rental income of $14,119.53 for the month of May 1962, and include in its taxable income for the fiscal year ended May 31, 1963, percentage rental income of $21,368.12 for the month of May 1963. Other adjustments have been conceded by the petitioner. All of the facts *212 have been stipulated by the parties and are hereby adopted as our findings. Rod Realty Company (herein called petitioner) is an Ohio corporation with its principal office at 4661 East Main Street, Whitehall, Ohio. Petitioner filed its Federal corporation income tax returns for the fiscal years ended May 31, 1962, and May 31, 1963, with the district director of internal revenue at Cleveland, Ohio. The fiscal year ended May 31, 1962, was the petitioner's first taxable year. During the years in issue the petitioner was the owner of a building located at 4661 East Main Street, Whitehall, Ohio. The building was leased to various persons or companies who operated discount departments in the building. A standard form of lease was executed by the petitioner and each tenant. The lease in each case provides, in pertinent part, as follows: 5. (a) Minimum Compensation: Lessee agrees to maintain its department in the manner hereinafter provided throughout the term of this Agreement and to pay Lessor a minimum annual compensation of Thirty Thousand Dollars ($30,000), payable in advance in equal monthly installments of Two Thousand Five Hundred Dollars ($2500.00) each on the first day of *213 each calendar month during the term of this Lease. * * *
(c) Percentage Compensation: In addition to the minimum compensation, Lessee shall pay each year, but in monthly installments as hereinafter provided, as additional compensation, Five percent (5%) of Lessee's total gross sales for such year, minus the minimum compensation payable pursuant to subdivision (a) above. 6. (a) Lessee agrees to deliver to Lessor within ten (10) days after the close of each calendar month, a "monthly statement of gross sales", showing the gross sales, as hereinafter defined, of Lessee during such month, and at the time of submission of such statement, Lessee shall pay to Lessor that amount by which the preceding month's percentage compensation exceeds the minimum compensation. (b) Within thirty (30) days after the expiration of each lease year, Lessee shall furnish to Lessor a statement of the gross sales of the department for the preceding lease year and a statement of the minimum and percentage rentals paid for such year. Such statement shall be certified by a Certified Public Accountant and signed by Lessee. At the time such statement is rendered to the Lessor, Lessee shall pay such additional *214 amount, if any, due under the percentage compensation for the lease year. If it shall be found that the Lessee has paid to Lessor on account of compensation payable under paragraph 5 above, a sum in excess of the minimum and percentage compensation payable hereunder, then Lessor shall refund such excess to Lessee promptly. (c) The term "lease year" shall be deemed to be the consecutive twelve (12) month period commencing with the first day of the calendar month during which the term hereof begins. (d) The term "gross sales" as used in this Lease, shall mean the total of (1) all sales made in or upon orders placed at or completed by delivery in, through or from the demised premises; (2) all charges made for services rendered in or from or upon orders placed at the demised premises; and (3) all sales and charges made in connection with business transacted in whole or in part upon or from the demised premises. Gross sales shall include sales and charges made for cash or upon credit, or partly for cash and partly for credit, without regard to whether or not collection is made of the amounts for which credit is given. Each sale, charge or business transaction upon installment or contract *215 therefor shall be treated as a gross sale for the full price or charge in the year during which such charge or contract is made. (e) Gross sales shall exclude (1) refunds, allowances and credits allowed or given in connection with merchandise sold and returned; (2) federal, state and municipal sales, use and income taxes which have been added to the price of merchandise sold or services rendered and actually paid by Lessee to the particular taxing authority involved. All lease years end October 31 of each year. The fiscal year of petitioner ends on May 31. Pursuant to the provisions of the lease, percentage compensation for each month was computed separately and paid to the petitioner for said month, if any was due. Annual accountings were made pursuant to the lease, and if the tenant had overpaid the percentage compensation by reason of the monthly payments provided, the excess was reimbursed to the tenants. The petitioner uses the accrual method of accounting. During the course of each fiscal year of the petitioner, minimum and percentage rental income was recorded as received. Adjustments required by the petitioner's method of accounting were made at the end of each fiscal *216 year. The percentage rental compensation due the petitioner from all tenants for the month of May in any fiscal year was not included in petitioner's taxable income for that fiscal year; such compensation was included in the following fiscal year's taxable income when received by the petitioner. The percentage rental compensation for the months of May 1962 and May 1963 was shown as a memorandum entry on the books of the petitioner for the fiscal years ended May 31, 1962, and May 31, 1963, respectively. The percentage rental compensation due the petitioner from its tenants for the month of May 1962 was $14,119.53 and for the month of May 1963 was $21,368.12. Petitioner contends that the percentage rentals for the months of May 1962 and 1963 are not taxable until the following fiscal years because such rental was subject to a condition of possible repayment at the end of the lease year and was not actually received prior to the end of each fiscal year under a claim of right. Consequently, the petitioner insists that it properly reported the income. Respondent, on the other hand, contends that the percentage rental income for the month of May 1962 should be included in gross income *217 for the fiscal year ended May 31, 1962, and the percentage rental income for the month of May 1963 should be included in gross income for the fiscal year ended May 31, 1963, because under the terms of the lease all events had occurred on May 31 of each fiscal year which fixed the petitioner's right to receive the percentage rental income due for the month of May. Respondent also contends that whether petitioner may have to refund a portion of the percentage rental income at the end of the lease year is not a contingency which affects the right of petitioner to receive the percentage rental income or will prevent the accrual of such amounts. We agree with the respondent. Section 451(a), Internal Revenue Code of 1954, provides as follows: SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION. (a) General Rule. - The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period. And section 1.451-1(a), Income Tax Regs., provides *218 that: Sec. 1.451-1(a) * * * Under an accrual method of accounting, income is includible in gross income when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. This case falls within the ambit of our opinion in Heer-Andres Investment Company, 17 T.C. 786 (1951). In that case we said (pp. 787-788): It has been firmly established that an item accrues for tax purposes when all the events have occurred which fix the amount and determine the liability of the obligor. Thus, United States v. Anderson, 269 U.S. 422, involved a deduction from gross income on account of a munitions tax imposed with respect to the year 1916. The return for the munitions tax was not due, nor was the tax payable, until 1917. The taxpayer attempted to deduct the tax from its 1917 income, whereas the Government insisted that since returns were filed on the accrual basis, the munitions tax accrued in 1916, and could be deducted only from the taxpayer's 1916 income. The Court's decision that the item accrued in 1916 has become a landmark in the field of accrual accounting for tax purposes. It would *219 serve no useful purpose to review the many and varied situations in which the concepts underlying that decision have been applied. Suffice it to say that just as it was not open to the taxpayer in the Anderson case to accrue the munitions tax in the year when it became due and payable, it is not open to petitioner herein to accrue the "additional rent" in the following year, merely because it did not become payable until the first 10 days of the following year. All the events which fixed the amount of the additional rent and determined the liability of the lessee to pay it had occurred during the fiscal year with respect to which such rent became payable. It is wholly immaterial, under established concepts of accrual accounting, that payment could not be compelled or was not in fact made until the following year. Cf. Rite-Way Products Co., 12 T.C. 475, 480. Here the percentage rental is payable in monthly installments. At the end of May 31, 1962, and May 31, 1963, all events had occurred which fixed petitioner's right to receive the percentage rental for the month of May and the amounts were exactly determined within 10 days thereafter. It makes no difference whether *220 a recomputation of the percentage rental at the end of the lease year might result in the lessor (petitioner) being required to refund to the lessee a portion of the percentage rental which the lessees paid during the lease year. In our view it is not such a contingency that will prevent the accrual of the May percentage rental. See and compare Brown v. Helvering, 291 U.S. 193, 199 (1934); Barker v. Magruder, 95 F. 2d 122, 124 (C.A.D.C., 1938); and Your Health Club, Inc., 4 T.C. 385, 388 (1944). A contingency that an accrual basis taxpayer may not be able to retain accrued income does not prevent it from accruing income in the year in which the taxpayer acquired the right to receive the income. By the terms of the lease the petitioner had an absolute right to the May percentage rental payments and the right to payment was unconditional. The only contingency here is that the petitioner may have to return a portion of the received rents in the subsequent fiscal year when the lease ends on October 31. Each lease specifically provides that each monthly percentage rental payment shall be paid by the tenth of the following month. Consequently, the right *221 to receive the income is certain; only the retention is uncertain. Accordingly, we hold in these circumstances that the petitioner must include the percentage rentals for the months of May 1962 and May 1963 in its gross income for the fiscal years ended May 31, 1962, and May 31, 1963, respectively. Decision will be entered for the respondent.