POLICY HOLDERS AGENCY, INC., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 93719.    Filed October 10, 1963.

*Frank P. Meadows, Jr.,* for the petitioner.
*Bernard A. Heeke,* for the respondent.

#### OPINION

FORRESTER, *Judge:* Respondent has determined a deficiency of
$1,217.12 [1] in petitioner's income tax for the calendar year 1958. The
only issue before us is whether petitioner realized taxable income
in 1958 based on the transfer of unclaimed premium refunds from a
liability account to a surplus account.

All of the facts have been stipulated and are so found.

The petitioner, Policy Holders Agency, Inc., hereinafter sometimes
referred to as the petitioner, is a corporation organized and existing
under the laws of the State of North Carolina.  The petitioner is en-
gaged in the business of operating an insurance agency representing
property and casualty insurance companies utilizing a so-called mutual
system of operation.  The petitioner, an accrual basis taxpayer, main-
tains its books and files its income tax returns on a calendar year
basis.  Petitioner filed its 1958 income tax return with the district
director of internal revenue at Greensboro, N.C.

The petitioner was organized by Willard E. Batts (hereinafter
called Batts), president of the corporation and principal stockholder,
on December 30, 1949.  It is a successor to a proprietorship operated
by Batts, who had operated a mutual insurance agency.  Batts re-
ceived 248 shares of the 250 shares of petitioner's issued stock.  The
petitioner agreed to assume outstanding indebtedness consisting of
current obligations due the insurance companies represented and an
indebtedness of $1,000 payable to Planters National Bank & Trust Co.,
plus all other debts or obligations of the proprietorship as reflected on
its books.

The general ledger of the predecessor proprietorship was continued
in the general ledger of the petitioner with the exception of the capital
stock account and goodwill account arising from the issuance of

---

[1] Respondent, in an amended answer, asserts an additional deficiency of $274.02, pur-
suant to sec. 6214(a), I.R.C. 1954.

capital stock in substitution for the propietor's equity account. The predecessor proprietorship and petitioner will hereinafter be called petitioner.

One general ledger account dating from 1942 was entitled "D & S Account," which is an abbreviation for dividend stored account. Credits to this account were made at least annually commencing December 31, 1942, in the following manner: As the agent of mutual insurance companies, petitioner received premium refunds or "dividends" from insurance companies for transmission to policyholders, by reason of the nature of mutual property and casualty insurance. The petitioner attempted to locate the policyholder, and as to those located either credited the premium refunds against renewal premiums or disbursed cash payments. Policyholders who could not be located were credited on the accounts receivable of the petitioner, creating credit balances. Some policyholders who had credits in the dividend-stored account have never been advised of the exact amount of their credit balances because they could not be located. Periodically, and at least annually at the close of the petitioner's operating year, the subsidiary accounts receivable ledger of the petitioner was analyzed and sums owing to policyholders whose current address was unknown were credited to the dividend-stored account, in order that the liability to these policyholders would be separately stated and not offset debit balances in the accounts receivable account.

The transactions in the dividend-stored account and the annual balances since its beginning are as follows:

| | Transactions | | Account balance |
| --- | --- | --- | --- |
| | Debits | Credits | |
| Willard E. Batts, d/b/a Mutual Insurance Agency: | | | |
| 1942 | | $494.66 | $494.66 |
| 1943 | | 328.44 | 823.10 |
| 1944 | | 372.27 | 1,195.37 |
| 1945 | | 156.01 | 1,351.38 |
| 1946 | | 617.11 | 1,968.49 |
| 1947 | | 123.07 | 2,091.56 |
| 1948 | | 499.37 | 2,590.93 |
| 1949 | | 388.49 | 2,979.42 |
| Policy Holders Agency, Inc. | | | |
| Balance on ledger continued from proprietorship | | 2,979.42 | 2,979.42 |
| 1950 | | 136.27 | 3,115.69 |
| 1951 | | 717.38 | 3,833.07 |
| 1952 | $26.89 | 250.89 | 4,057.07 |
| 1953 | | 188.13 | 4,245.20 |
| 1954 | | 487.40 | 4,732.60 |
| 1955 | | 528.92 | 5,261.52 |
| 1956 | 18.58 | 109.60 | 5,352.54 |
| 1957 | | 304.39 | 5,656.93 |
| 1958 | | 205.51 | 5,862.44 |
| Adjustment made as of Dec. 31, 1958, upon receipt of report dated Mar. 3, 1959: | | | |
| Prior to Dec. 31, 1952 | 4,057.07 | | |
| Year 1953 | 188.13 | | |
| Year 1954 | 487.40 | | |
| Year 1955 | 528.92 | | 600.92 |

The debit transactions in 1952 and 1956 arose from premium refunds anticipated by the petitioner, credited to the dividend-stored account, and debited to the insurance company's account. Upon failure of insurance company to grant the premium refunds, the account of the insurance company was cleared by debiting the dividend-stored account.

It was stipulated that if petitioner's president, Batts, were called upon to testify as a witness in the case, he would testify that if any policyholder were located and should claim sums credited to the dividend-stored account, such sums would be paid to the policyholder regardless of any expiration of the statute of limitations on collection.

At the close of business on December 31, 1958, an audit of petitioner's books and records was commenced by a new accountant. In the course of the audit, an adjustment was made by the accountant to transfer $528.92 from the dividend-stored account to a gross income account for the calendar year 1958. This amount was reported in petitioner's Federal income tax return as "premiums refunds." This amount was transferred to income by the accountant by reason of the accountant's determination that credits in the amount of $528.92 to the dividend-stored account as of December 31, 1955, were barred by the North Carolina statute of limitations and were not properly reflected on the books of the petitioner as accounts payable. At the close of business on December 31, 1958, the accountant likewise prepared an adjusting entry (which was actually made on or about March 3, 1959) on the books of petitioner as set forth below to reduce the dividend-stored account to $600.92, being the total of the transactions credited to said account in 1956, 1957, and 1958, which years the accountant determined were not barred by the statute of limitations at the time of the adjusting entry:

Debits:
Dividend-stored account_____ $5, 261. 52
Credits:
Retained earnings_____ 4, 732. 60
Premium refunds_____ 528. 92
Accountant explanation—To record income in dividend-
stored account as follows:
Prior to Dec. 31, 1952_____ $4, 057. 07
Year 1953 (amended return filed)_____ 188. 13
Year 1954 (amended return filed)_____ 487. 40
Year 1955 (picked up in 1958)_____ 528. 92

Total_____ $5, 261. 52

Petitioner filed amended Federal income tax returns for the calendar years 1956 and 1957 on March 16, 1959. On these returns additional income was reported as premium refunds unclaimed by policyholder

in the amount of $188.13 for the year 1956 and $487.40 for the year 1957, being the amount of credits to the dividend-stored account for the years 1953 and 1954, respectively. Payment of the additional tax and interest reflected by the amended returns was made to the Internal Revenue Service, for which no refunds have been tendered by the Commissioner.

The issue before us is whether petitioner realized taxable income in 1958 based on a transfer of unclaimed premium refunds from a liability account to a surplus account.

Petitioner argues that the bulk of the unclaimed premium refund income arose in years prior to 1958, the only year before us. It asserts that the relevant taxable income was realized yearly, and was determined by the running of the North Carolina statute of limitations. Hence it argues that it received unclaimed premium refund income in each year, measured by the unclaimed premium refunds credited to the dividend-stored account 3 years earlier. Respondent avers that the amount shifted by the accountant in 1958 from the dividend-stored account to retained earnings represented income for 1958. Both parties agree that the unclaimed premium refunds which were transferred to retained earnings represent ordinary income. The question is whether the relevant amount is properly recognizable as income in 1958.

An accrual taxpayer realizes income in the year "when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Sec. 1.446–1(c)(1)(ii), Income Tax Regs. See *Commissioner* v. *Hansen*, 360 U.S. 446. In the instant case, therefore, the petitioner realized income in the year when each unclaimed premium refund "ceased to be a true liability." *North American Coal Corporation*, 32 B.T.A. 535, 542, affd. 97 F. 2d 325 (C.A. 6). See *G. M. Standifer Construction Corporation*, 30 B.T.A. 184, appeal dismissed 78 F. 2d 285 (C.A. 9); *Peabody Coal Co.*, 18 B.T.A. 1081, affd. 55 F. 2d 7 (C.A. 7), certiorari denied 287 U.S. 605. The year in which income is realized is a determination of fact. As stated in *Welp* v. *United States*, 201 F. 2d 128, 133 (C.A. 8):

Supported by recently adjudicated cases, we reaffirm our previous conclusion that the determination of what shall be considered income for a given year is a question of fact to be determined by the facts under applicable principles of law, and that income accruing in one tax year may not be taxed in another. * * *

*Commissioner* v. *Mnookin's Estate*, 184 F. 2d 89 (C.A. 8), affirming 12 T.C. 744. Accounting entries, while of evidentiary value, are not determinative. *Northwestern States Portland Cement Co.* v. *Huston*, 126 F. 2d 196, 199 (C.A. 8); *North American Coal Corporation, supra.*

From at least 1942, petitioner received premium refunds for transmission to policyholders. Petitioner then attempted to locate the policyholders, and, as to those located, it either credited the premium refunds against renewal premiums or disbursed cash payments. These premium refunds are not in issue.

Amounts received for policyholders who could not be located were credited on the accounts receivable account of the petitioner. Periodically, and at least annually, the sums owing to policyholders who could not be located were credited to the dividend stored account.

It is of great significance that an analysis of the dividend stored account shows that from 1942 through 1958, no amount was ever debited to the dividend-stored account because of a claim of a policyholder.[2] For 16 years, amounts totaling almost $6,000 were credited to the dividend-stored account, and during that entire period no amount was debited because of a claim by or payment to a policyholder. Further, credits were never made to the dividend-stored account unless it had been established that the policyholder could not be located.

We find and hold that the amount transferred to a surplus account in 1958 did not represent true accounts payable by the beginning of 1958 and that, because of the long and constant experience of petitioner, the relevant unclaimed premium refunds should have been taken into income in each year, as the transfers to the dividend-stored account were made. See *Commissioner* v. *Mnookin's Estate, supra; Northwestern States Portland Cement Co.* v. *Huston, supra; Geyer, Cornell & Newell, Inc.*, 6 T.C. 96; *Greene Motor Co.*, 5 T.C. 314; *El Dorado Oil Works*, 46 B.T.A. 994; *North American Coal Corporation, supra; Cooper-Brannan Naval Stores Co.*, 9 B.T.A. 105.

Income properly accruable in one year is not deemed income in some other year, even if it was not reported in the proper year. *Commissioner* v. *Mnookin's Estate, supra; Heer-Andres Investment Co.*, 17 T.C. 786; *Robert G. Frame*, 16 T.C. 600, affd. 195 F. 2d 166 (C.A. 3); *Consolidated Motor Lines, Inc.*, 6 T.C. 1066; *Grauman's Greater Hollywood Theatre, Inc.*, 37 B.T.A. 448; *North American Coal Corporation, supra; G. M. Standifer Construction Corporation, supra; Peabody Coal Co., supra; Bank of Commerce*, 10 B.T.A. 73; *H. J. Heinz Co.* v. *Granger*, 147 F. Supp. 664 (W.D. Pa.). Hence the Commissioner erred in asserting that the amount transferred to a surplus account in 1958 was income in 1958. As the Board stated in *Cooper-Brannan Naval Stores Co., supra* at 108–109:

---

[2] Small amounts were debited in 1952 and 1956, but these were due to failure of payment by an insurance company rather than to policyholder claims.

The amount * * * which respondent added to gross income for 1920 for the reason that it represented an accumulation of income for prior years, but not reported in such prior years, is certainly not income for the year 1920 when it was income for prior years * * *

Similarly, this Court noted in *Greene Motor Co., supra* at 317:

Petitioner has consistently followed an accrual method of accounting. No change in that method was requested or made. The amounts of the so-called special reserves improperly deducted and allowed in the prior year or years unlawfully reduced taxable income of the petitioner for those respective years only. Those amounts were properly includible in income of the earlier years— not of the taxable year. * * *

Further, the Court of Appeals for the Eighth Circuit has stated in *Northwestern States Portland Cement Co.* v. *Huston, supra* at 200:

We think it clear that in the case at bar the additions to reserve in the years 1916 and 1917, being legally nondeductible, represented taxable income for those years, and that the restoration to surplus made in 1932 was not taxable income for that year.[2] [Footnote omitted.]

Cf. *Wichita Coca Cola Bottling Co.* v. *United States*, 152 F. 2d 6 (C.A. 5), certiorari denied 327 U.S. 806; *Boston Consolidated Gas Co.*, 44 B.T.A. 793, reversed on other grounds 128 F. 2d 473 (C.A. 1); and *Fidelity-Philadelphia Trust Co.*, 23 T.C. 527, in which last case we correctly made the factual determination that the date of the book entries was critical in the following language, at page 529:

They mark the point of time when it is reasonable to conclude as a practical matter, on the basis of the present record, that the unclaimed deposits will not in fact be paid over to the depositors,[2] * * * [Footnote omitted.]

In the instant case it is obvious that such is not the fact.

Petitioner avers that the unclaimed premium refunds credited to the dividend-stored account in 1955 were income in 1958, due to the passage of the 3-year North Carolina statute of limitation on contract claims. State statute of limitations, while of evidentiary value, are not determinative of the factual question of when income is realized. *El Dorado Oil Works, supra; Alfred K. Nippert et al., Executors*, 32 B.T.A. 892, 897; *North American Coal Corporation, supra; G. M. Standifer Construction Corporation, supra.*

Because of the business experience of petitioner, we find that it derived $205.51 of unclaimed premium income in 1958, which amount is the total unclaimed premium refunds credited to the dividend-stored account for 1958. See *Automobile Club of New York, Inc.* v. *Commissioner*, 304 F. 2d 781 (C.A. 2), affirming 32 T.C. 906; *Northwestern States Portland Cement Co.* v. *Huston, supra; Fort Pitt Brewing Co.*, 20 T.C. 1, affd. 210 F. 2d 6 (C.A. 3), certiorari denied 347 U.S. 989.

*Decision will be entered under Rule 50.*