T.C. Memo. 2011-233

UNITED STATES TAX COURT

THOMAS AND MONICA L. KLEBER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1545-09.                    Filed September 28, 2011.

David R. Emerich, for petitioner.

Christina E. Ciu for respondent.

MEMORANDUM OPINION

HAINES, Judge:  Respondent determined a deficiency in
petitioners' Federal income tax for 2006 of $86,441 and a penalty
under section 6662(a) of $17,288.[1]  The issues for decision are:

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended for the year at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.  Amounts are rounded to the nearest dollar.

(1) Whether petitioners are required to include in income $263,587 of cancellation of indebtedness income (COI income) for taxable year 2006 as reported by the Defense Finance and Accounting Services (DFAS); (2) if so, whether the $263,587 of COI income reported is the correct amount; and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a).

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed their petition, petitioners lived in Arizona.

On October 7, 1996, petitioner Monica Kleber (Kleber) executed a lease (lease) for agricultural purposes with the Department of the Navy (Navy). The lease term was from January 1, 1997, to December 31, 2001, and entitled Kleber to 1,140 acres of land at the Naval Air Station in Lemoore, California. The lease required Kleber to pay the Navy annual rent of $191,520, payable in advance at the rate of $47,880 every quarter, and to perform certain farming activities in accordance with prescribed guidelines.

Kleber failed to make any rent payments after August 4, 1998. On December 28, 1998, Kleber sent a letter to the Navy stating that she was no longer able to continue performing the

farming activities pursuant to the terms of the lease. On January 11, 1999, the Navy sent Kleber a letter acknowledging receipt of her letter and confirming the Navy's intention to terminate the lease for default. Additionally, this letter demanded that Kleber pay past due rent of $196,020 plus $2,736 of interest accrued. On February 2, 1999, the Navy sent Kleber a modified contract changing the expiration date of the lease term to January 11, 1999. The Navy determined past due rent on the basis of an accounting from the lease start date to its termination on January 11, 1999.

On February 4, 1999, the Navy sent Kleber a letter providing formal notification of her continued violation of the lease and demanding full payment of all past due rent and interest. On February 26, 1999, the Navy sent Kleber another letter, demanding payment on the unpaid rent and interest. Petitioners did not make any payments on the amounts due.

On February 26, 1999, the Navy sent a letter to the Defense Finance and Accounting Service (DFAS), requesting DFAS' assistance in collection of amounts due with respect to the lease. On April 6, 1999, DFAS sent Kleber a letter demanding payment of past due rent of $196,020, interest of $6,798, and a one-time administrative charge of $25.

On September 4, 2001, DFAS referred the collection action to the Treasury Cross-Service Program (Treasury). Treasury referred

the debt back to DFAS as uncollectible on September 30, 2004. As a result, on November 4, 2005, DFAS sent a letter to Treasury requesting approval to terminate the debt collection action. On November 22, 2005, DFAS authorized a writeoff of Kleber's debt. In 2006 DFAS issued Kleber a Form 1099-C, Cancellation of Debt, including COI income of $263,587.

Petitioners timely filed a joint income tax return for 2006. Upon examination of petitioners' return, respondent determined that petitioners had failed to include $263,587 of COI income for taxable year 2006 as reported by DFAS on Form 1099-C and issued a notice of deficiency on October 14, 2008. Respondent also determined a penalty under section 6662(a) of $17,288. On January 7, 2009, petitioners mailed their petition to this Court.

## Discussion

### I. Burden of Proof

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). However, under certain circumstances the burden of proof may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the income tax liability of the taxpayer. Sec. 7491(a)(1).

If an information return, such as a Form 1099-C, serves as the basis for the determination of a deficiency, section 6201(d) may apply to shift the burden of production to the Commissioner. Section 6201(d) provides that in any court proceeding, if a taxpayer asserts a reasonable dispute with respect to the income reported on an information return and the taxpayer has fully cooperated with the Commissioner, then the Commissioner has the burden of producing reasonable and probative information in addition to the information return. See McQuatters v. Commissioner, T.C. Memo. 1998-88.

Petitioners dispute the correctness of Form 1099-C, and there is no evidence that they failed to cooperate with respondent. Petitioners claim that the amount of COI income for 2006, if there was any, was incorrect and the debt should have been discharged by DFAS in some earlier year. Therefore, we hold that section 6201(d) applies and that the burden is shifted to respondent to produce reasonable and probative information concerning the deficiency in addition to the Form 1099-C DFAS filed.[2]

To prove that the COI income was properly and accurately reported for 2006, respondent provided the lease agreement, the

---

[2]This is generally the rule in unreported income cases in the Ninth Circuit, where this case is appealable, under Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977). See Lawson v. Commissioner, T.C. Memo. 2009-147 n.3; Rodriguez v. Commissioner, T.C. Memo. 2009-92 n.2.

Navy's accounting of rent due and paid, a letter from Kleber informing the Navy of her inability to pay the rent due pursuant to the lease, and a series of letters from the Navy and DFAS to Kleber concerning the indebtedness. The letters sent to Kleber include the amount of indebtedness and provide a timeline of the Navy's and DFAS' collection procedures, culminating in the issuance of a Form 1099-C in 2006. Thus, we find that respondent produced reasonable and probative information concerning the deficiency, meeting his burden of production under section 6201(d).

## II. Year of the Discharge of Indebtedness

In general, the term "income" as used in the Internal Revenue Code means income from any source, including income from the discharge of indebtedness. Sec. 61(a)(12); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955); United States v. Kirby Lumber Co., 284 U.S. 1 (1931). For 2006 DFAS issued petitioners a Form 1099-C which reported COI income of $263,587. According to respondent, that amount is includable in petitioners' 2006 income.

The moment it becomes clear that a debt will never be repaid, that debt must be viewed as having been discharged. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). The determination of whether discharge of indebtedness has occurred is fact specific and often turns on the subjective intent of the

creditor as manifested by an objectively identifiable event. Id. The issuance of a Form 1099-C is an identifiable event, but it is not dispositive of an intent to cancel indebtedness. Owens v. Commissioner, T.C. Memo. 2002-253, affd. in part, revd. in part and remanded 67 Fed. Appx. 253 (5th Cir. 2003). Moreover, a mere bookkeeping entry by a creditor does not result in discharge of indebtedness income. See Cozzi v. Commissioner, supra at 445.

Any identifiable event that fixes the loss with certainty may be taken into consideration. Id. (citing United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398 (1927)); cf. sec. 1.6050P-1(b)(2)(i), (iv), Income Tax Regs. (providing an exclusive list of eight "identifiable events" under which debt is discharged for information reporting purposes, including a discharge pursuant to a foreclosure, the application of a defined policy of the creditor to discontinue collection activity and discharge the debt, or the expiration of a nonpayment testing period). There is a rebuttable presumption that an identifiable event has occurred during a calendar year if a creditor has not received a payment on an indebtedness at any time during a testing period ending at the close of the year. Sec. 1.6050P-1(b)(2)(iv), Income Tax Regs. The testing period is a 36-month period increased by the number of calendar months during all or part of which the creditor was precluded from engaging in

collection activity by a stay in bankruptcy or similar bar under State or local law. Id.

The presumption that an identifiable event has occurred may be rebutted by the creditor if the creditor (or a third-party collection agency on behalf of the creditor) has engaged in significant, bona fide collection activity at any time during the 12-month period ending at the close of the calendar year, or if facts and circumstances existing as of January 31 of the calendar year following expiration of the 36-month period indicate that the indebtedness has not been discharged. Id. Significant, bona fide collection activity does not include nominal or ministerial collection action, such as automated mailing. Sec. 1.6050P-1(b)(2)(iv)(A), Income Tax Regs. Facts and circumstances indicating that indebtedness has not been discharged include the existence of a lien, or the sale or packaging for sale of the indebtedness by the creditor. Sec. 1.6050P-1(b)(2)(iv)(B), Income Tax Regs.

Kleber failed to make any rent payments after August 4, 1998. On January 11, 1999, the Navy sent Kleber a letter confirming the Navy's intention to terminate the lease for default and demanding that Kleber pay past due rent of $196,020 plus $2,736 of interest accrued. On April 6, 1999, DFAS sent Kleber a letter demanding payment of past due rent of $196,020, interest of $6,798, and a one-time administrative charge of $25.

Accordingly, the 36-month testing window described by the regulations began in 1999 when the Navy and DFAS demanded payment of past due rent and interest. Because petitioners have failed to make any payments on the amounts due, a rebuttable presumption exists that an identifiable event occurred in 2002 and the COI income must be recognized for 2002.

As discussed above, in support of respondent's assertion that petitioners had COI income for 2006, respondent provided a series of letters from the Navy and DFAS to Kleber stating the amount of indebtedness, a description of the Navy's and DFAS' alleged collection activity, and DFAS' letter authorizing the termination of the debt collection action. More specifically, respondent relies on the summary of events attached to DFAS' letter to Treasury on November 4, 2005, which indicates that DFAS referred Kleber's case to Treasury on September 4, 2001, and that on September 30, 2004, Treasury referred the debt back to DFAS as uncollectible. Respondent asserts that this evidence proves that DFAS engaged in significant, bona fide collection activity from 1999 to 2006, rebutting the presumption that an identifiable event occurred in 2002.

Despite respondent's summary of events, he has failed to provide any information describing any substantive collection activities that took place. Between April 6, 1999, and the day DFAS issued Kleber Form 1099-C in 2006, petitioners did not

receive any correspondence with respect to any indebtedness pursuant to the lease.  Respondent has failed to provide any evidence of the existence of a lien, the sale or packaging for sale of Kleber's debt, or any other activity that would be indicative of an active creditor.  Although sufficient to meet respondent's burden of production under section 6201(d), the evidence respondent provided failed to indicate an identifiable event or a Government policy to rebut the presumption that the identifiable event occurred in 2002.  Accordingly, we hold that petitioners did not have any COI income from DFAS with respect to the lease for 2006.[3]

III. <u>Section 6662(a) Penalty</u>

Section 6662(a) and (b)(2) imposes a 20-percent accuracy-related penalty upon any underpayment of tax resulting from a substantial understatement of income tax.  An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  The Commissioner bears the burden of production with respect to penalties.  Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001).  In view of our holding above, respondent has failed to meet his burden of production with

---

[3]Petitioners further dispute the amount of the debt on Form 1099-C.  However, because of our holding herein we find it unnecessary to address his claim.

respect to the penalty.  Accordingly, we hold that petitioners are not liable for the accuracy-related penalty.

The Court, in reaching its holdings, has considered all arguments made, and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.