T.C. Summary Opinion 2012-46

UNITED STATES TAX COURT

DAVID SCOTT STEWART AND CARLA ANNETTE STEWART, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10374-11S.                    Filed May 21, 2012.

David Scott Stewart, pro se.

Mayer Y. Silber and Michael Dancz, for respondent.

SUMMARY OPINION

ARMEN, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2008 Federal income tax of  $2,138.  The issues for decision are whether petitioners must recognize cancellation of indebtedness (COI) income in 2008 and, if so, in what amount. Because we hold that petitioners did not have COI income in 2008, we need not and do not discuss the subsidiary issue.

<u>Background</u>

Some of the facts have been stipulated, and they are so found.  We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioners resided in the State of Illinois when the petition was filed.

On October 22, 1994, David Scott Stewart (petitioner) incurred a credit card obligation to Maryland Bank National Association (MBNA).  Petitioner defaulted on his obligation to MBNA at some time between October 22, 1994, and September 6, 1996.  Petitioner made no payments on the debt after the default.  MBNA charged off the debt on September 12, 1996.  At some point between September 12,

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue.

1996, and December 28, 2007, NCO Portfolio Management, Inc. (NCO), acquired petitioner's defaulted account from MBNA.

On December 28, 2007, Portfolio Recovery Associates, LLC (PRA), acquired petitioner's defaulted account from NCO. Although aware that a State statute of limitations period for commencing collection activity in regard to the debt had expired on February 15, 2001, PRA began making automated attempts to collect payments from petitioner.

On April 14, 2008, PRA received a letter from petitioner (2008 letter) that demanded PRA cease its automated collection activities. Once PRA received the 2008 letter, the company stopped its automated attempts at collection and took no other collection-related action. PRA subsequently issued to petitioner a Form 1099-C, Cancellation of Debt, which reported $8,570.71 in COI income for the taxable year 2008.

Petitioners timely filed a joint Federal income tax return for 2008 but did not include the purported COI income on the return.

In a notice of deficiency respondent increased petitioners' income by the amount reported on the Form 1099-C. Petitioners subsequently filed a timely petition with this Court to contest the deficiency determined by respondent.

## Discussion[2]

A. Burden of Production

Pursuant to section 6201(d), if an information return, such as a Form 1099-C, serves as the basis for the determination of a deficiency, the burden of production may shift to the Commissioner. Del Monico v. Commissioner, T.C. Memo. 2004-92. Section 6201(d) provides that in any court proceeding, if a taxpayer asserts a reasonable dispute with respect to the income reported on an information return and the taxpayer has fully cooperated with the Commissioner, then the Commissioner has the burden of producing reasonable and probative information in addition to such information return. Id.

Petitioners raise a reasonable dispute with respect to the accuracy of the information return. Petitioners contend that the indebtedness at issue in this case was actually discharged long before 2008. Petitioners further contend that the amount of income reported on the Form 1099-C is incorrect.[3] There is no evidence in the record to suggest that petitioners failed to cooperate with respondent. Thus, under section 6201(d), the burden is on respondent to produce reasonable and

---

[2] Given the record as well as our discussion infra, we decide this case without regard to the burden of proof.

[3] Petitioner does not deny that he incurred a credit card obligation to MBNA.

probative information concerning the information return issued by PRA as well as the deficiency in this case. See id.; see also Kleber v. Commissioner, T.C. Memo. 2011-233.

Respondent provided account reports from PRA in order to satisfy his burden of production. The account reports include the date PRA acquired petitioner's defaulted account, the original account balance received by PRA, and a timeline of PRA's automated collection activity. Therefore, we hold that the information provided by respondent concerning the information return is sufficient to satisfy his burden of production under section 6201(d).

B. Cancellation of Indebtedness Income

The term "gross income" is defined in the Internal Revenue Code as "all income from whatever source derived". Sec. 61(a). It includes income from the discharge of indebtedness, commonly referred to as COI income. Sec. 61(a)(12). The rationale of this principle is that the cancellation of indebtedness provides the debtor with an economic benefit that is equivalent to income. See United States v. Kirby Lumber Co., 284 U.S. 1 (1931); Friedman v. Commissioner, 216 F.3d 537 (2000), aff'g T.C. Memo. 1998-196; see also sec. 108.

The question as to the year for which a taxpayer realized COI income is one of fact to be determined based on the evidence. See Policy Holders Agency, Inc. v.

Commissioner, 41 T.C. 44, 47 (1963); Callan Court Co. v. Commissioner, T.C. Memo. 1965-261. A debt is deemed discharged the moment it becomes clear that such debt will never be repaid. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). Determining when that moment occurs requires a practical assessment of the facts and circumstances with respect to the likelihood of repayment. Id. "Any 'identifiable event' which fixes the loss with certainty may be taken into consideration." Id. (citing United States v. S.S. White Dental Mfg. Co., 274 U.S. 398 (1927)); cf. sec. 1.6050P-1(b)(2)(i), (iv), Income Tax Regs. (providing an exclusive list of eight "identifiable events" under which debt is discharged for information reporting purposes, including the expiration of a 36-month nonpayment testing period).

We have acknowledged that it is often impossible to find only one event that clearly establishes the moment at which a debt is discharged, such as pinpointing the moment when property has been abandoned. See Cozzi v. Commissioner, 88 T.C. at 445. Instead, there can be a series of identifiable events, any one of which could reasonably indicate that a debt has been discharged. Id. Accordingly, we address below the identifiable events that inform our decision.

1.  Expiration of a 36-Month Nonpayment Testing Period

We have held that a rebuttable presumption arises that an identifiable event occurred in a calendar year if, during a testing period ending at the close of such year, the creditor has received no payments from the debtor. Kleber v. Commissioner, T.C. Memo. 2011-233 (citing section 1.6050P-1(b)(2)(iv), Income Tax Regs.). The testing period for this rebuttable presumption is generally 36 months. Id.

The presumption that an identifiable event has occurred upon expiration of the 36-month nonpayment testing period may be rebutted in two specific ways. Id. First, the presumption may be rebutted "if the creditor (or a third-party collection agency on behalf of the creditor) has engaged in significant, bona fide collection activity at any time during the 12-month period ending at the close of the calendar year". Id. Ministerial collection action, such as automated mailing, however, does not constitute "significant, bona fide collection activity" for purposes of rebutting the presumption that an identifiable event has occurred. Id. (citing section 1.6050P-1(b)(2)(iv)(A), Income Tax Regs.).

Second, the presumption may be rebutted "if facts and circumstances existing as of January 31 of the calendar year following expiration of the 36-month period indicate that the indebtedness has not been discharged." Sec.

1.6050P-1(b)(2)(iv), Income Tax Regs. Those facts and circumstances include "the sale or packaging for sale of the indebtedness by the creditor". Kleber v. Commissioner, T.C. Memo. 2011-233 (citing section 1.6050P-1(b)(2)(iv)(B), Income Tax Regs.).

Petitioner defaulted on his credit card account with MBNA sometime after October 22, 1994.[4] On September 12, 1996, MBNA charged off petitioner's debt.[5] Petitioner made no payments on the defaulted account after the chargeoff. Thus, we find on the basis of the record that the 36-month nonpayment testing period expired in 1999. Accordingly, a rebuttable presumption exists that an identifiable event indicating that the debt was discharged occurred in that year. See id.

There is no evidence that MBNA, NCO, or PRA engaged in "significant, bona fide collection activity" at any time after MBNA charged off petitioner's debt in 1996. Id. Although PRA engaged in automated collection activity for approximately two months after the company acquired petitioner's defaulted account, these ministerial actions do not constitute significant, bona fide collection

---

[4] The parties stipulate that petitioner defaulted on the debt sometime between October 22, 1994, and September 6, 1996.

[5] Although petitioner contends that the discharge of indebtedness occurred when MBNA charged off his debt, we have held that a mere bookkeeping entry by a creditor does not necessarily result in COI income at the time of such entry. See Cozzi v. Commissioner, 88 T.C. 435 (1987).

activity. See id. Moreover, although the parties agree that NCO acquired petitioner's account from MBNA sometime within the 11-year period from September 12, 1996, to December 28, 2007, there is no evidence to identify with precision when such transfer occurred. The transfer of petitioner's defaulted account could have occurred long after January 31 of the calendar year following expiration of the 36-month nonpayment period. See sec. 1.6050P-1(b)(2)(iv), Income Tax Regs. Without specific evidence to the contrary, it would appear that petitioner's debt was discharged in 1999 when it was clear that the debt would not be repaid. See Kleber v. Commissioner, T.C. Memo. 2011-233.

2. Issuance of Form 1099-C

Respondent contends that petitioner's debt was discharged in 2008 when PRA issued Form 1099-C. A decision by a creditor to discontinue collection activity may require that creditor to issue a Form 1099-C. Sec. 1.6050P-1(b)(2)(i)(G), Income Tax Regs. The issuance of Form 1099-C is indeed an identifiable event, but it is not dispositive of a discharged debt. Owens v. Commissioner, T.C. Memo. 2002-253, aff'd in part, rev'd in part and remanded, 67 Fed. Appx. 253 (5th Cir. 2003). PRA was aware that a State statute of limitations period with respect to collection on petitioner's defaulted account expired in February 2001. It appears from the record that PRA attempted to revive the

defaulted account in an attempt to coerce petitioner, using automated mailing and automated telephone calls, to make voluntary payments to PRA despite over a decade of nonpayment and an expired limitations period.[6] When PRA received petitioner's 2008 letter, the company immediately stopped its automated collection activity and issued Form 1099-C. We are not persuaded, however, that the decision by PRA to cease its automated collection activity and issue a Form 1099-C in 2008 was the first identifiable event indicating that petitioner's debt would never have to be repaid.[7]

---

[6] In general, a State statute of limitations does not extinguish an underlying debt obligation, but simply provides an affirmative defense to an action by the creditor. Miller Trust v. Commissioner, 76 T.C. 191, 195 (1981). Although under some circumstances the expiration of a State statute of limitations period can serve as an identifiable event, it is not conclusive as to when a debt has been discharged. See Bear Mfg. Co. v. United States, 430 F.2d 152 (7th Cir. 1970) (holding that although a State statute of limitations period expired in an earlier year, COI income was realized by the debtor only after the canceled debt was recorded in the debtor's books); Miller Trust v. Commissioner, 76 T.C. at 195 ("State statutes limiting the time within which a creditor may bring an action against a debtor to recover the debt, while of evidentiary value, are not necessarily controlling."). This may be particularly true when a debtor's affirmative statute of limitations defense has yet to be upheld in a final judgment or decision of a judicial proceeding, and the period for appealing the judgment or decision has not yet expired. See sec. 1.6050P-1(b)(2)(ii), Income Tax Regs.

[7] Petitioner was unable to provide evidence that any COI income was reported in an earlier year. Income realized by a taxpayer in an earlier year, however, is not deemed realized in some later year simply because there is no evidence that the income was reported in an earlier year. See Policy Holders

(continued...)

Therefore, on the basis of the record and after a practical assessment of the facts and circumstances surrounding the likelihood of repayment, we hold that petitioners did not have any COI income from PRA in 2008.  See Kleber v. Commissioner, T.C. Memo. 2011-233.

## Conclusion

We have considered all of the arguments advanced by respondent, and, to the extent not addressed herein, we conclude that those arguments are irrelevant, moot, or meritless.

To give effect to the foregoing,

Decision will be entered for

petitioners.

---

[7](...continued)

Agency, Inc. v. Commissioner, 41 T.C. 44, 48 (1963); see also sec. 108(a) (providing several circumstances under which COI income may be excluded from gross income).