T.C. Memo. 2014-115

UNITED STATES TAX COURT

ROBERT SIEVERS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17326-10.                    Filed June 10, 2014.

Robert Sievers, pro se.

<u>Melissa Jane Hedtke</u>, for respondent.

MEMORANDUM OPINION

BUCH, <u>Judge</u>:  The Internal Revenue Service issued a notice of deficiency

to Mr. Sievers, determining deficiencies, additions to tax, and penalties for 2006,

2007, and 2008 as follows:[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2]

|  |  | Additions to tax | | | Accuracy-related penalty |
|  |  | | | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) | Sec. 6662(a) |
| 2006 | $142,015 | $31,953 | $26,273 | $6,721 | --- |
| 2007 | 23,178 | --- | --- | --- | $4,636 |
| 2008 | 9,176 | 2,044 | 591 | --- | --- |

After the IRS issued the notice of deficiency, the parties made many concessions, including the IRS' conceding all of the additions to tax for 2006. The issues remaining for consideration are whether Mr. Sievers: (1) is entitled to mortgage interest and real estate tax deductions for each year, (2) is entitled to certain business expense deductions for each year, (3) had discharge of indebtedness income for 2008, (4) is liable for an accuracy-related penalty for 2007, and (5) is liable for additions to tax for failure to file a return timely and failure to pay tax timely for 2008.

---

[1](...continued)
Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[*3]**                           Background

At the time the petition was filed, Mr. Sievers resided in Minnesota.  Mr.

Sievers owned and operated a landscaping business named Groundscape.  In the

fall of 2007 Mr. Sievers experienced financial difficulty in his landscaping

business, and as a result he moved to Arizona to try "flipping"[2] houses.  Having

had little success at that venture, in the spring of 2008 Mr. Sievers returned to

Minnesota and resumed his landscaping business.

The record is not clear as to whether Mr. Sievers timely filed a Form 1040,

U.S. Individual Income Tax Return (return), for 2006, although the notice of

deficiency is premised in part on Mr. Sievers' not having filed that return.[3]  Mr.

Sievers timely filed a 2007 return but did not file a 2008 return.  As authorized by

section 6020(b), respondent prepared substitutes for returns for 2006 and 2008

using both bank deposit analyses and information returns.

On May 5, 2010, the IRS issued a notice of deficiency for 2006, 2007, and

2008 to Mr. Sievers.  Mr. Sievers timely filed a petition disputing the notice of

---

[2]Flipping is defined as the "practice of buying something, such as goods, real estate, or securities, at a low price and quickly reselling at a higher price." Black's Law Dictionary 715 (9th ed. 2009).

[3]Mr. Sievers asserts that he timely filed his 2006 return.  Consistent with this assertion, respondent conceded the addition to tax for failure to timely file a return for 2006; thus the question of whether he timely filed is not before us.

[*4] deficiency.  This case was originally set for trial in February 2012.  In anticipation of that trial date Mr. Sievers prepared a new set of income tax returns covering those years.  The Court continued the case to allow Mr. Sievers additional time to gather documents to submit to the IRS and to prepare for trial.

After the case was continued, Mr. Sievers prepared a second set of returns, which he submitted to the IRS along with a general ledger and copies of canceled checks.  On this second set of returns he claimed deductions for mortgage interest, real estate taxes, and various business expenses relating to his landscaping business, and for 2008 he claimed a deduction for tuition.

Mr. Sievers generally did not keep receipts or a log of expenses for purchases; rather, he relied on bank statements and canceled checks to substantiate his expenditures.  Nevertheless, before trial respondent conceded that Mr. Sievers substantiated more than $260,000 of business expenses for 2006, principally consisting of labor, materials, supplies, and depreciation.  Respondent conceded fewer deductions for 2007 and 2008.  The parties filed a stipulation of facts and a supplemental stipulation of facts at trial, and they filed a stipulation of settled issues five months after trial.  We begin with the second set of returns and address the remaining deductions and income disputed at trial.

**[*5]**                                   <u>Discussion</u>

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving those determinations wrong.[4]  Income tax deductions are a "matter of legislative grace", and the burden of proving any deduction rests on the taxpayers.[5]  Further, taxpayers are required to maintain sufficient records to "show whether or not such person is liable for tax".[6]

<u>Home Mortgage Interest and Real Estate Taxes</u>

Mr. Sievers claims that he is entitled to deductions for home mortgage interest and real estate taxes related to his home in Minnesota for each of the three years.  Mr. Sievers claims deductions for portions of these amounts as expenses for business use of his home on Schedules C, Profit or Loss From Business, and the remainder as itemized deductions on Schedules A, Itemized Deductions.  Both the home mortgage interest and the real estate taxes paid were supported by

---

[4]Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

[5]<u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>see also</u> Rule 142(a).

[6]Sec. 6001.

**[\*6]** stipulated information returns.  Respondent allowed deductions only for portions of these items for 2006 and disallowed them in their entirety for 2007 and 2008.

A taxpayer may deduct interest paid or accrued on acquisition indebtedness or home equity indebtedness with respect to a qualified residence.[7]  A "qualified residence" includes the taxpayer's principal residence within the meaning of section 121 and one other residence of the taxpayer that is selected by the taxpayer for purposes of the deduction and that is used by the taxpayer as a residence within the meaning of section 280A(d)(1).[8]  Section 280A(d)(1) provides:  "[A] taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of--A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental."  Similarly, taxpayers may claim a deduction pursuant to section 164(a)(1) for any "[S]tate and local, and foreign, real property taxes" paid or accrued during the taxable year.

The stipulated information returns and bank records reflect that Mr. Sievers made the payments through direct withdrawals for the home interest and real

---

[7]Sec. 163(h).

[8]Sec. 163(h)(4)(A).

[*7] estate taxes. Mr. Sievers lived in his Minnesota home while in Minnesota, and certainly for more than 14 days each year. There is no evidence that his Minnesota home was rented out at fair rental when Mr. Sievers was in Arizona. As a result, Mr. Sievers' Minnesota home was a qualified residence. Therefore, Mr. Sievers is entitled to both the mortgage interest and real estate taxes deductions in full for each year.

Regarding the business use of Mr. Sievers' residence, respondent conceded that Mr. Sievers could treat a portion of the mortgage interest and the real estate taxes as business expenses for 2006. Mr. Sievers claims he is entitled to additional deductions for the business use of his home. As a general rule, section 280A(a) denies deductions for the business use of a taxpayer's residence. Section 280A(c)(1)(A), however, allows a taxpayer to deduct expenses allocable to that portion of a residence that the taxpayer uses exclusively and regularly as the principal place of business for the taxpayer's trade or business. Personal use of a room or segregated area precludes claiming deductions for business use of that same space, unless some or all of the use of the room was for the storage of inventory.[9] Although Mr. Sievers testified that he stored materials and equipment at his home, he did not establish that he used any portion of his home exclusively

---

[9]See Hefti v. Commissioner, T.C. Memo. 1993-128.

**[*8]** for business during the years at issue.  Therefore, Mr. Sievers is not entitled to any deductions for the business use of his home beyond those that respondent conceded.  As discussed above, however, he may claim itemized deductions for his qualified residence.

Business Expense Deductions

Taxpayers are allowed a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".[10] Taxpayers are not allowed a deduction for personal, living, or family expenses except where specifically allowed by the Code.[11]  Again, deductions are a "matter of legislative grace",[12] and taxpayers must maintain sufficient records to establish the amounts of deductions.[13]

Certain expenses are subject to strict substantiation rules under section 274(d).  Such expenses include those relating to travel, meals and entertainment, gifts, and listed property under section 280F(d)(4).  For the years at issue, listed property included passenger automobiles, any other property used as a means of

---

[10]Sec. 162(a).

[11]Sec. 262(a).

[12]INDOPCO, Inc. v. Commissioner, 503 U.S. at 84.

[13]Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

**[*9]** transportation, computers, and cellular telephones.[14]  To comply with the strict substantiation rules, the taxpayer must substantiate, either through adequate records or through sufficient evidence that corroborates the taxpayer's testimony, the amount of the expense, the time and place the expense was incurred, the business purpose of the expense, and the business relationship of the taxpayer to any others who may have benefited by the expense.[15]  To substantiate by adequate records, the taxpayer must maintain an account book, log, diary, or similar record and documentary evidence to establish each element of an expenditure.[16]  While a contemporaneous log is not required, a taxpayer's subsequent reconstruction of his or her expenses requires corroborative evidence to support such a reconstruction. The corroborative evidence, coupled with the reconstruction, can elevate that subsequent reconstruction to the same level of credibility as a contemporaneous record.[17]

---

[14]Sec. 280F(d)(4).

[15]Sec. 274(d).

[16]Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

[17]Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

**[*10]** <u>Car and Truck Expenses</u>

For each year, Mr. Sievers claims that he is entitled to deductions for car and truck expenses incurred in the operation of his landscaping business. These expenses consist of fuel, repairs, and other expenses. Respondent conceded portions of the expenses for 2006 and 2007, but Mr. Sievers asserts that he is entitled to deduct additional amounts for 2006, 2007, and 2008. Mr. Sievers provided a log that he and his accountant created using the bank records and canceled checks. Both the log and the supporting documents were provided to the Court through stipulated exhibits. The log included the date, vendor, and amount of each purchase. Mr. Sievers also provided testimony regarding a repair in 2006, as well as his fuel expenses for each year.

Mr. Sievers provided an invoice and a demand letter that threatened legal action unless he paid the total amount due of $6,439. The repairs were made to one of the vehicles Mr. Sievers used in his landscape business in 2006. Mr. Sievers also credibly testified that the dealership demanded that he pay the amount in cash. The stipulated exhibits include copies of the front and back of the processed withdrawal slip for the exact same amount as well as an entry in Mr. Sievers' bank records. Mr. Sievers' testimony, coupled with the corroborative

**[*11]** evidence, establish that he is entitled to the business expense deduction for this repair.

Mr. Sievers and his workers used multiple vehicles and both heavy and light equipment in the landscaping business. The log reflects more than 250 purchases of fuel in a single year, including many days with multiple purchases. The log does not include any purchases while Mr. Sievers was in Arizona. Mr. Sievers credibly testified about the vehicles and equipment he used in his business and the amounts of fuel they required. The log and the supporting bank records corroborate Mr. Sievers' testimony concerning his fuel expenses for each year. Therefore, Mr. Sievers is entitled to the business expense deduction for his fuel for each year.

Depreciation and Section 179 Expensing

Mr. Sievers claims that he is entitled to a deduction for depreciation of equipment used in his landscaping business for each year and a deduction under section 179 for 2006. Respondent conceded a portion of the depreciation deduction for 2006 but disallowed the entirety of the section 179 deduction and the depreciation for each of 2007 and 2008.

Section 167 allows a depreciation deduction for the exhaustion, wear and tear, or obsolescence of property used in a trade or business. The period of

**[*12]** depreciation begins when the asset is placed in service.[18] "Placed in service" means the time that property is first placed by the taxpayer "in a condition or state of readiness and availability for a specifically assigned function", whether for use in a trade or business, for the production of income, in a tax-exempt activity, or in a personal activity.[19]

Mr. Sievers provided bills of sale and canceled checks for all of the items for which he claims depreciation. With one exception, the documents and his testimony corroborate that Mr. Sievers and Groundscape made the purchases, the dates of purchase, the costs, descriptions of the property, and the date each item was placed in service. The one exception is that Mr. Sievers' father purchased the 2006 Ford F-350 Super Duty on March 31, 2006, and there is no record of its being sold to Mr. Sievers or Groundscape or being placed in service on that date. Accordingly, Mr. Sievers is entitled to depreciation deductions for each year, except those attributable to the 2006 Ford F-350 Super Duty purportedly placed in service on March 31, 2006.

Section 179(a) generally allows a taxpayer to elect to treat the cost of section 179 property as a current expense in the year the property is placed in

---

[18]Sec. 1.167(a)-10(b), Income Tax Regs.

[19]Secs. 1.167(a)-11(e)(1)(i), 1.179-4(e), Income Tax Regs.

[*13] service, within certain dollar limitations.[20]  The election must specify the items to which the election applies and the portion of the cost of each item that is to be taken into account under section 179(a).[21]  Moreover, a section 179 election must be made on the taxpayer's first income tax return (whether or not the return is timely) or on an amended return filed within the time prescribed by law (including extensions) for filing the original return for such year.[22]  An election made under section 179 and any specifications contained in the election may not be revoked (modified or changed) without the Secretary's consent.[23]

Although respondent conceded the addition to tax for failure to timely file a return for 2006, the return Mr. Sievers claims to have timely filed for 2006 is not in the record.  Mr. Sievers did not testify at trial regarding the content of this original 2006 return.  Further, Mr. Sievers did not allege, either in documents filed with the Court or at trial, that he made an election under section 179 on his original return.  Even the two sets of returns that he submitted while this case has

---

[20]See sec. 179(b).

[21]See sec. 179(c)(1)(A); sec. 1.179-5(a)(1) and (2), Income Tax Regs.

[22]See Patton v. Commissioner, 116 T.C. 206, 208-209 (2001); sec. 1.179-5(a), Income Tax Regs.

[23]See sec. 179(c)(2); King v. Commissioner, T.C. Memo. 1990-548.

**[*14]** been pending are inconsistent in this regard.[24] Mr. Sievers has the burden of proving that he made an election under section 179 on his original return, and he has not met his burden. Accordingly, Mr. Sievers is not entitled to a business expense deduction under section 179 for 2006.

Materials and Supplies

Mr. Sievers claims that he is entitled to business expense deductions under section 162 for materials and supplies for each year. Respondent conceded that Mr. Sievers was entitled to most of these expense deductions for 2006 and about half of these expense deductions for each of 2007 and 2008. The amounts respondent disallowed for 2007 and 2008 are consistent with the amounts Mr. Sievers testified he spent on renovating his Minnesota home in those years. Home renovation expenses are personal and not deductible as business expenses.[25] Therefore, Mr. Sievers is not entitled to business expense deductions for materials and supplies in excess of the amounts respondent conceded.

---

[24]On the first 2006 return Mr. Sievers provided while this case has been pending, he claimed a section 179 deduction for only the 2006 Ford F-350 Super Duty purchased by his father. On the second 2006 return he claimed a section 179 deduction for both the 2006 Ford F-350 Super Duty and a Jeep. Even if Mr. Sievers had claimed the section 179 deduction for the Ford F-350 Super Duty on his original 2006 return, he would not be entitled to the deduction because the record does not support that either he or his business owned that vehicle.

[25]Sec. 262(a).

**[\*15]** <u>Tuition</u>

Mr. Sievers claims that he is entitled to a business expense deduction for tuition as "other expenses" on his Schedule C for 2008. Respondent conceded a small amount of "other expenses" for 2008. It is not clear whether respondent's concession relates to Mr. Sievers' tuition expenses or to one of the other three items he listed under "other expenses". The parties provided a Form 1098-T, Tuition Statement, issued to Mr. Sievers for 2008. However, the copy of the check that corroborated the payment was drawn on Mr. Sievers' father's account. Further, Mr. Sievers did not explain how this expense related to his landscaping business.

Taxpayers are allowed a deduction for payment of qualified tuition and related expenses incurred during the taxable year.[26] "[Q]ualified tuition and related expenses" include tuition and fees paid by a taxpayer on his or her own behalf or on behalf of a spouse or a dependent.[27] It is clear that Mr. Sievers did not pay the amount reflected on the Form 1098-T; therefore, he is not entitled to a deduction for qualified tuition, nor is he entitled to a business expense deduction for the tuition.

---

[26] <u>See</u> sec. 222(a).

[27] <u>See</u> secs. 25A(f)(1)(A), 222(d)(1).

**[*16]** <u>Cancellation of Indebtedness Income</u>

Respondent included income from discharge of indebtedness in 2008 in the notice of deficiency, on the basis of a Form 1099-C, Cancellation of Debt, issued by Ford Motor Credit Co.  Mr. Sievers asserts that a vehicle he purchased as the president of Groundscape in 2005 was a "lemon" and that Ford agreed to take the vehicle back as a trade-in for the 2006 Ford F-350 Super Duty.[28]  In response to a summons, Ford Motor Credit Co. provided documents including the April 2005 sale and financing contract, the business credit application, and other records.  Those records show that Mr. Sievers had made only one timely payment and two late payments between April and November when the 2005 vehicle was repossessed and then sold at auction in December of 2005.  The records also show that the proceeds of the auction were applied to Mr. Sievers' outstanding liability, leaving a remaining balance of approximately $12,000.  In 2008, Ford Motor

---

[28]"State 'lemon laws' typically provide that if the manufacturer cannot fix the defective part to conform to the express warranty after a 'reasonable number of attempts', and the nonconformity 'substantially impairs' the vehicle's value or use, the manufacturer must replace the vehicle or refund the purchase price." <u>Chrysler Corp. v. Commissioner</u>, T.C. Memo. 2000-283, <u>aff'd</u>, 436 F.3d 644 (6th Cir. 2006).

**[\*17]** Credit Co. issued the Form 1099-C, reporting cancellation of indebtedness income of $9,186.[29]

Mr. Sievers' version of events regarding the 2005 vehicle is not supported by the record. As discussed, the 2006 Ford F-350 Super Duty was purchased by Mr. Sievers' father in March of 2006, four months after the 2005 vehicle was repossessed, and the vehicle identification number of the vehicle his father traded in does not match that of the repossessed vehicle.

Gross income generally includes income from the discharge of indebtedness.[30] The rationale of this principle is that the cancellation of indebtedness provides the debtor with an economic benefit that is equivalent to income.[31] When a taxpayer realizes cancellation of indebtedness income is a

---

[29]The business credit application Mr. Sievers completed listed Groundscape's name and taxpayer identification number as well as his own name and Social Security number. The records from Ford Motor Credit Co. include two Forms 1099-C, one issued to Mr. Sievers and one issued to Groundscape, each for $9,186. Respondent has not asserted that Mr. Sievers has additional cancellation of indebtedness income as a result of this second Form 1099-C to Groundscape, and thus we do not address the second Form 1099-C.

[30]Sec. 61(a)(12).

[31]See United States v. Kirby Lumber Co., 284 U.S. 1 (1931); Friedman v. Commissioner, 216 F.3d 537, 545 (6th Cir. 2000), aff'g T.C. Memo. 1998-196; see also sec. 108.

[*18] question of fact to be determined on the basis of the evidence.[32]  A debt is deemed discharged the moment it becomes clear that the debt will never be repaid.[33]  "Any 'identifiable event' which fixes the loss with certainty may be taken into consideration."[34]

A bookkeeping entry by a creditor does not result in discharge of indebtedness income.[35]  The issuance of a Form 1099-C is an identifiable event, but it is not dispositive of an intent to cancel indebtedness.[36]  We have held that a rebuttable presumption arises that an identifiable event occurred in a calendar year if, during a testing period (generally 36 months) ending at the close of the year, the

---

[32]See Policy Holders Agency, Inc. v. Commissioner, 41 T.C. 44, 47 (1963); Callan Court Co. v. Commissioner, T.C. Memo. 1965-261.

[33]Cozzi v. Commissioner, 88 T.C. 435, 445 (1987).

[34]Cozzi v. Commissioner, 88 T.C. at 445 (citing United States v. S.S. White Dental Mfg. Co., 274 U.S. 398 (1927)); see also sec. 1.6050P-1(b)(2)(i), (iv), Income Tax Regs. (providing an exclusive list of eight "identifiable events" under which debt is discharged for information reporting purposes, including the expiration of a 36-month nonpayment testing period).

[35]See Kleber v. Commissioner, T.C. Memo. 2011-233 (citing Cozzi v. Commissioner, 88 T.C. at 445).

[36]Owens v. Commissioner, T.C. Memo. 2002-253, aff'd in part, rev'd in part, and remanded, 67 Fed. Appx. 253 (5th Cir. 2003).

[*19] creditor has received no payments from the debtor.[37]  The records reflect that the last payment Ford Motor Credit Co. received from Mr. Sievers was in August 2005.  The 36-month period ended during 2008, and Ford Motor Credit Co. issued the Form 1099-C in 2008.  Mr. Sievers has not rebutted the presumption that the debt was discharged in 2008; therefore he had discharge of indebtedness income for 2008.

Additions to Tax

In the notice of deficiency, respondent determined that Mr. Sievers is liable for additions to tax for failure to timely file his 2008 income tax return and failure to timely pay his 2008 tax.  Section 6651(a)(1) imposes an addition to tax when a taxpayer fails to file a timely return unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect.  Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount of tax shown on a return, unless the taxpayer establishes that the failure to pay was due to reasonable cause and not willful neglect.  Respondent bears the burden of production with respect to

---

[37]Kleber v. Commissioner, T.C. Memo. 2011–233 (citing section 1.6050P-1(b)(2)(iv), Income Tax Regs.).

[*20] the penalty and the additions to tax.[38]  Mr. Sievers then bears the burden of proving any defenses.[39]

Mr. Sievers conceded that he did not file a 2008 income tax return, and Mr. Sievers did not allege that he made any payment toward his 2008 liability. Further, Mr. Sievers did not assert that these failures were due to reasonable cause and not willful neglect.  Therefore, Mr. Sievers is liable for the additions to tax under section 6651(a)(1) and (2) for 2008.

Accuracy-Related Penalty

In the notice of deficiency issued to Mr. Sievers, respondent determined an accuracy-related penalty under section 6662(a) for 2007.  Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on "any portion of an underpayment of tax required to be shown on a return" if the underpayment is due to, among other reasons, negligence, disregard of rules or regulations, or any substantial understatement of income tax.  As with the section 6651(a) additions to tax, respondent bears the burden of production as to the penalty.[40]  The penalty will not apply to any portion of an underpayment for which a taxpayer establishes

---

[38]See sec. 7491(c).

[39]See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

[40]Sec. 7491(c).

**[\*21]** that he or she had reasonable cause and acted in good faith.[41]  As defined in the Code, "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard."[42]  Negligence has been further defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person  would do under the circumstances.'"[43]  Additionally, a taxpayer is negligent if he fails to maintain sufficient records to substantiate the items in question.[44]  An understatement of income tax is "substantial" if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000.[45]

Mr. Sievers' exact underpayment for 2007 depends on the Rule 155 computations.  If these computations establish a substantial understatement of

---

[41]Sec. 6664(c)(1).

[42]Sec. 6662(c).

[43]Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964)).

[44]See Higbee v. Commissioner, 116 T.C. at 449; sec. 1.6662-3(b)(1), Income Tax Regs.

[45]Sec. 6662(d)(1)(A).

[*22] income tax for any year, respondent has met his burden.[46]  Even if this is not the case, Mr. Sievers is still liable for the penalty because he acted with negligence.  Respondent has the burden of production for negligence.  Mr. Sievers did not introduce adequate records at trial to substantiate many of the deductions disallowed in the notice of deficiency or those claimed in the later prepared return for 2007.  Likewise, Mr. Sievers did not provide any evidence or testimony to prove that he acted with reasonable cause and in good faith with respect to the disallowed deductions.  Accordingly, Mr. Sievers is liable for the section 6662(a) penalty for 2007.

Conclusion

Mr. Sievers is entitled to deductions for mortgage interest and real estate taxes as well as some additional deductions for business expenses as discussed above.  Additionally, Mr. Sievers received cancellation of indebtedness income for 2008.  Finally, Mr. Sievers is liable for the additions to tax under section 6651(a)(1) and (2) for 2008 and is liable for the accuracy-related penalty under section 6662(a) for 2007.

---

[46]See Olagunju v. Commissioner, T.C. Memo. 2012-119; Jarman v. Commissioner, T.C. Memo. 2010-285.

**[*23]** In reaching these holdings, we have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.